## JAMES M. BOARMAN *vs.* JAMES A. GROVES et ux.

It is a familiar rule of equity jurisprudence, that general debts, or general personal engagements of a married woman contracted during coverture, are not chargeable upon her separate estate ; and unless a *feme covert* who contracts a debt, or enters into an engagement, designs that such engagement or debt shall constitute a charge upon her separate property, *held*, a court of equity will not entertain jurisdiction to enforce payment thereof out of such separate estate during her lifetime.

To bind the separate property of the wife, it is essential that the intention should exist to create such a charge ; but it is not necessary for that purpose that such intention should be positively expressed ; for it is *held*, that such intention will be inferred when the debt has been created during the coverture, as principal or as security for her husband, or jointly with him.

Notwithstanding the denial in the answer of the appellee, of the sufficiency of the evidence to sustain the allegations in the bill, we think the bill should be sustained.

ON appeal from the circuit court of Hinds county ; Hon. George Coalter, judge.

The facts of the case as shown by the record are, that at the time the contracts were made upon which the bill was filed in the court below, the real defendant in error, Mrs. Ann Groves, was the wife of James C. Mitchell, since deceased, and she subsequently married Groves. The defendant in error claims that the contracts entered into by her deceased husband (Mitchell) are void, because she never sanctioned them. The court below dismissed the bill, and the plaintiff in error appealed to this court for relief.

*D. Shelton,* for plaintiff in error.

There being no trustee named in the marriage contract, the husband as to the personalty was, by operation of law, constituted a trustee for his wife, and as such was entitled to the possession and control of the trust property. 2 How. 751 ; 2 Roper on H. & W. 152, 156 ; Clancey, 256 ; 9 Ves. 583. The husband as trustee under the marriage contract, with full power and authority to possess and control the interest of the wife, could make contracts binding on her, because his interest was coupled with a power that was irrevocable. 11 John. 47 ; Paley on Agen. 184 ; 7 Ves. jr. 28.

The act of her husband made the contract at common law the wife's, and it bound her separate property. The rule is, that the separate estate of the married woman is liable for debts for which she has given a written security. 15 Ves. 59 ; 2 Ves. jr. 193 ; 2 Ib. 150 ; 11 Ves. 222 ; 17 Ib. 305 ; 1 Ves. jr. 277 ; 9 Ves. 473 – 478 ; 3 Madd. 387 ; 2 Pr. Will. 144 ; 8 Ves. 175.

The principle is, that by signing she intended to bind something, and, as she could not bind herself personally, she therefore intended to bind her separate property. See authorities heretofore referred to. So the fact that the debt was contracted during coverture, either as principal or jointly with her husband, is *prim' facie* evidence to charge her separate estate. 7 S. & M. 83 ; 2 Story's Eq. Jur. § 1400.

The decree should have been granted as prayed for in the bill.

Mr. Chief Justice SMITH delivered the opinion of the court.

At the time of the institution of this suit, the appellee, Mrs. Ann Groves, was the widow of James C. Mitchell, deceased, to whom she had been married in the autumn of 1837.

By a marriage agreement between these parties previously entered into, the real and personal property then owned by Mrs. Groves was settled upon her as her separate estate.

While this marriage subsisted, the said Mitchell entered into a written agreement for the rent of a farm for the year 1841, by which the sum of $500 were stipulated to be paid to com-

24*

plainant. This agreement was executed by Mitchell individually, and, in the name of the appellee, as her agent or attorney in fact. Mitchell likewise made and delivered to complainant a note for $160, the price of two mules, purchased by him from complainant. This note was executed in the same manner as the agreement. Several other contracts for articles ordinarily consumed in a family, or used in the cultivation of a farm, are alleged to have been made by Mitchell in the name of the appellee. But none of these were in writing.

This bill was filed to subject the separate property which the said appellee, as the wife of Mitchell, then held, to the payment of these debts.

By the deed of settlement full power and authority were reserved to the wife to lease, sell, convey, or otherwise to dispose of her real estate ; but which was to remain subject to the demands of her creditors. Neither the land, nor its rents or profits were to be liable for the debts of the said Mitchell ; to whom was denied all interest in, right to, or control over the land, "except as the attorney in fact" of the wife, "during her lifetime, or of her said daughters after her death."

The right of alienation, in reference to the slaves of the appellee, reserved under said deed of settlement, was equally extensive. The slaves were to remain under the joint direction of appellee and said Mitchell ; to whom all authority to sell or dispose of the same, " except as the attorney in fact " of the wife, "and at her special instance and request" was expressly denied.

From this statement it is perceived that the powers possessed by the appellee to bind the separate estate were ample. And this is the conclusion, whether she be regarded in reference to her separate estate as a *feme sole*, or as possessing such powers only as she had reserved expressly by the marriage agreement.

Having the power to bind her separate property for the payment of debts, the question, then, which is first presented, is, Whether the appellee has in fact subjected her separate property to the satisfaction of appellant's demands ?

The material allegations of the bill are sustained by the

testimony of Richardson and Thompson.   The first of these witnesses states, that the appellee told him that she knew that her husband, Mitchell, had signed her name to the contracts described in the bill; that there was an understanding between them on the subject, and that he was authorized to sign her name to said notes.

These statements were made to witness a short time after the farm had been leased by Mitchell.   At a different time appellee, (Mrs. Mitchell,) upon this witness expressing apprehensions that the creditors of her husband would seize the crop then in cultivation on the farm, told him that she had rented the farm, and that the crop would be hers.   Her answer admits that her slaves were worked on the farm, and this witness further testifies, that about the time the contract for the lease of the farm was made, two mules were purchased by Mitchell, one of which (the other having died) was, after Mitchell's death, claimed by appellee and sold for her own use.

The witness, Thompson, proves that he was informed by appellee in February, 1842, a short time before she removed from the place, that she (Mrs. M.) had the previous year rented said farm of Boarman, and had declined to renew the lease, because she considered the farm a sickly place.

The principles which determine the liability or exemption of married women, in transactions of, this character, are well understood.   It is a familiar rule of equity jurisprudence, that the general debts, or general personal engagements of a married woman, contracted during coverture, are not chargeable upon her separate property.   Hence, unless a *feme covert* who contracts a debt, or enters into an engagement, designs that such engagement or debt shall constitute a charge upon her separate property, a court of equity will not entertain jurisdiction to enforce payment out of such separate estate, during her life.   2 Story's Eq. Jur. § 1399, 1400.   It is essential that there should an intention exist to bind the separate property, to create such a charge; but it is held not to be necessary for that purpose that such intention should be positively expressed.   It is settled, that such intention will be inferred

where the debt has been contracted during the coverture as principal or as surety for her husband, or jointly with him. Roper on Husb. & Wife, ch. 21, sec. 3; *Berry* v. *Bland,* 7 S. & M. 83; 9 Ib. 445.

Upon these principles, we think, notwithstanding the denial in the answer of appellee, that the evidence recited was sufficient to sustain the allegations of the bill.

One of the witnesses proves an express declaration of the appellee, that the husband, Mitchell, was authorized to execute the notes for the rent of the farm and for farming utensils. And both of the witnesses prove that the appellee, at different times, stated she had rented the farm from Boarman. These facts distinctly proved, taken in connection with the purposes for which the contracts were made, were sufficient to establish them as the contracts of the appellee. The decree of the court below was therefore erroneous, and must be reversed.