JAMES BLOCK, Survivor, &c. *v.* CYPRIAN CROSS AND WIFE.

1. HUSBAND AND WIFE: JURISDICTION OF THE WIFE, AS TO HER SEPARATE ESTATE.—Where the instrument creating a separate estate in a married woman (in cases not governed by the statutes of the State on that subject) is silent, as to her power of disposition over it, neither restricting it, nor prescribing the mode in which it is to be exercised, the power of disposition is absolute, as an incident to the property, and the estate is that of a *feme sole.* See *Garrett* v. *Dabney,* 27 Miss. 343.

2. SAME: SAME: CONFLICT OF LAWS: WHAT LAW GOVERNS.—The statutes of this State, regulating the powers of married women over their separate estate, only apply to cases where the separate estates were acquired in this State; and they do not enlarge, or restrict, the rights and powers of *femes covert,* over property acquired by them in any other jurisdiction.

3. SAME: SAME.—The power of disposition of a *feme sole,* over her separate estate, acquired in another State, is regulated and governed by the law of the State in which the acquisition was made; and she may exercise such power in this State, after her removal hither.

4. SAME: INTENT TO BIND HER ESTATE—HOW SHOWN.—Whether the separate estate of a married woman is bound by her contract, depends upon her intention at the time; and her intention to charge her estate, may be shown by her positive declarations, or may be inferred from her conduct, and the circumstances under which the debt was contracted. See *Boarman* v. *Groves,* 23 Miss. 280.

5. SAME: TRUSTEE: EVIDENCE.—The declaration of the trustee of a married woman, who was a member of a mercantile firm, with whom she had contracted a debt, that she owed the firm nothing, by reason of his having collected of her assets a sufficiency to pay the debt, will not establish a payment of the debt, in the absence of all evidence, showing an appropriation of such assets to the use of the partnership.

APPEAL from the Chancery Court of Madison county. Hon. E. G. Henry, chancellor.

The substance of the pleadings is fully set out in the opinion of the court; it will be necessary only to add more in detail the evidence in the cause.

The complainants read in evidence a duly authenticated transcript of the records of the Superior Court of Equity of Northampton county, in the State of North Carolina, by which it appeared

that, at the fall term, A. D. 1851, of said court, Cross and wife filed their bill against E. J. Peebles, the executor of Mrs. Martha B. Turner, and the trustee of Mrs. Cross, in which they set out the substance of the will of said Martha B. Turner, and claimed certain slaves for Mrs. Cross, by virtue of the provisions thereof. They alleged that the debts of the testatrix had all been paid, and stated that Mrs. Cross was desirous of removing to the State of Mississippi, and to the same county in which her brother, Lucius A. Turner, resided. That she was desirous, also, of removing her estate secured to her by the will; and that she had, in pursuance of a power vested in her by the will, appointed said Lucius her trustee. It was further alleged that Peebles had not accounted for the property belonging to Mrs. Cross in his hands, and that he was unwilling to surrender the trust, and deliver up the property, without a decree of the court directing him to do so. The prayer was, that Peebles account, and that he be directed to surrender the trust, and convey the property to Lucius A. Turner, and that said Turner's appointment as trustee be confirmed.

At the same term Peebles answered, admitting that he had seventeen slaves in his possession belonging to Mrs. Cross under the provisions of Mrs. Martha B. Turner's will, and stating his readiness to surrender the trust and convey the property to Lucius A. Turner, if protected by a decree of the court, and after payment to him of whatever might be ascertained to be due, upon an account stated by a commissioner of the court, for advances made for the benefit of Mrs. Cross, and the support of herself and family. The answer then sets out in detail the amounts received by the trustee for the hire of the slaves, and the disbursements made by him for the support of Mrs. Cross and her family, amounting in the aggregate to $850. An account was ordered, and the commissioner's report, finding a balance of $22 against Mrs. Cross, was confirmed at the same term of the court, and a final decree was rendered, directing Peebles to convey the slaves held in trust by him to Lucius A. Turner, as trustee, to be held by him upon the trusts and conditions mentioned in Mrs. Turner's will; and Peebles was ordered to surrender the slaves to L. A. Turner, upon the payment to him of the $22 found due by the commissioner, and Turner was permitted to remove the slaves to the State of Mississippi.

In the transcript is the deed executed by Peebles, on the first day of November, A. D. 1851, to L. A. Turner, in pursuance of the decree of the court.

The will of Mrs. Martha B. Turner, is dated 2d December, A. D. 1848, and appears to have been probated in the proper court in North Carolina, in November, A. D. 1849.   The third item of the will is as follows:

"Item 3d. The rest and residue of my estate of every kind, after the payment of my just debts, I give, devise, and bequeath, unto Etheldred J. Peebles, my executor hereinafter named, for the sole and separate use of my daughter, Martha, wife of Cyprian Cross, during her natural life, and at her death to be equally divided among such children as she may leave her surviving; the said property to be free, in all respects whatever, from the contracts, debts, or liabilities of the said Cross; but the profits and use of the same, during her coverture, to accrue to the sole use of my said daughter; and in case of the death of said Peebles, or removal of him, or my said daughter, or for any other good cause in the opinion of my said daughter, requiring another trustee, or in case the said Peebles should refuse to act, then, and in any of such cases, I hereby empower my said daughter, from time to time, as she may deem best, to appoint another trustee in the place of the said Peebles; and when she so appoints by deed, or paper in the nature of a deed, such trustee shall convey the said property to such person as she may appoint, to be held under the same trust, and for the same purposes as herein contained; and should convenience, in the opinion of my said daughter, require a sale and change of any of the property hereby conveyed, from one kind to another, then I, in such case, authorize the acting trustee, upon her signifying her wish so to do, in writing, under her hand and seal, to make such sale or change in the property: provided always, the proceeds of the sale, or property obtained in exchange, is conveyed to said trustee, to be held by him upon the uses, purposes, and trusts, as the original fund and estate hereby bequeathed; and unless this is done, the trustee acting to and for the time being, is not to allow any sale, or exchange, or other disposal, of any part of the property hereby bequeathed."

The evidence of both parties, in relation to the correctness of

the account sought to be collected, and the liability of Mrs. Cross for the same, and as to payments made on the same, is fully set out in the opinion of the court.

On final hearing, the chancellor dismissed the bill, and the complainant appealed.

*W. P. Harris,* for appellant.

1. The will of Mrs. Turner took effect in North Carolina, where the legatee and the property were at the time; the rights and powers thereby conferred, are to be ascertained by the laws of that State. Mrs. Cross's subsequent removal to the State, could not have the effect to diminish or enlarge any right which she had acquired under the will in North Carolina; and hence the statutes of this State, of 1839 and 1846, having nothing to do with this controversy.

2. By the law of North Carolina, when a separate estate is given to a married woman, and the instrument creating it did not point out the mode in which alienations of it shall be made, and does not contain any restriction upon her power to alienate, then the absolute power to make any disposition of it, as if she were a *feme sole,* exists. The absolute power of alienation vests as an incident to her property, in a dominion over the things granted. To hold otherwise, would be to deprive her of the estate; for if she have no power to alienate it, or use it, then, since the husband's rights and powers are expressly excluded, it follows that she is effectually excluded from any participation in the bounty of the testator; and that she is the mere depositary of the title, and not of the use of the property, to accumulate for others. See *Frazer* v. *Brownlow,* 3 Iredell Eq. R. 237; *Harris* v. *Harris,* 7 Iredell, 111. This is also the undoubted doctrine of the Chancery Court in England.

3. It being thus established that the wife had the power to alienate or charge her separate estate (or income in this case), by her contracts, the question occurs, did she do it? It is universally conceded, that a charge on a married woman's separate estate is nothing more than an intention to bind it; and that the intention to bind it, is nothing more than an intention to pay the debt out of it. The modern and most reasonable doctrine discards the distinction between oral and written contracts, and looks more to the

nature of the debt contracted, as evidence of an intention to bind the estate, than to the evidence by which the debt is to be established. Certainly, the express oral promise of the wife to pay a debt contracted for meat and clothing for herself and children, is as clear an indication of her intention to bind her separate estate, as the execution of a note by her for a debt of her husband's. See 3 Mylne & Keene, 220; 9 Hare, 774; 10 B. Munroe, 320; *Baker* v. *Gregory*, 28 Ala. 544; *Bradford* v. *Greenway*, 17 Ib. 797; 26 Ib. 332; 7 Paige, 1.

The evidence of the intention to bind her estate need not be express; it may be implied from circumstances. Per Smith C. J. in *Boarman* v. *Groves*, 23 Miss. R. 280.

Mr. Harris then reviewed the evidence on this point, and insisted that it clearly established an intention, on the part of Mrs. Cross, to bind her separate estate. He also reviewed the evidence in relation to the correctness of the account and payment.

*Lawson* and *Luckett*, for appellees,

Contended, that as the property was owned by Mrs. Cross, after her removal to this State, her rights and powers over it were to be ascertained and regulated by our laws; that after her removal here she was subject to our laws, and her marital rights were regulated by them. Story's Confl. of Laws, § 69; that whether this was the general rule or not, still it did not affect this case, for if it were conceded that her rights and powers over the estate were governed by the laws of North Carolina, still such laws would not be enforced here when against our policy; and that it was most clearly the policy of the State, as constituted by the Acts of 1839 and 1846, that married women should not have the absolute power and dominion over their separate estate, but, on the contrary, they could only charge or alienate them with the consent of their husbands.

But if the doctrine of the English Chancery Courts were conceded to be applicable to this case, instead of our own laws, still the case was with the appellees; for it has been settled in this court, that by that rule, a married woman, as to her separate estate, was only a *feme sole sub modo*, and to this extent, that she was expressly authorized by the instrument creating it. *Doty* v. *Mitchell*,

9 S. & M. 447; *Frost* v. *Doyle*, 7 Ib. 75; *Andrews* v. *Jones et al.* 32 Miss. R. 274; *Montgomery* v. *Agricultural Bank*, 10 S. & M. 575; and see also, *Elam* v. *Morgan*, 4 Yerg. 475; *Marshall* v. *Stevens*, 8 Humph. 159; *Litton* v. *Baldwin et al.* Ib. 209; 1 Lead. Eq. Cases, 405–414; *Lancaster* v. *Dolan*, 1 Rawle, 231; *Lynch's Ex'or* v. *Rouse*, 1 Barr. 111; *Rogers* v. *Smith*, 4 Ib. 93; *Thomas* v. *Folwell*, 2 Wharton, 11; 8 Leigh R. 20.

2. The intention to charge the estate is not shown. The bare fact, that she purchased the goods on a credit, is not sufficient; it should also be shown, that it was necessary for the account to be created, and that the trustee had no funds in his hands, and that he is insolvent. 1 Bailey (S. C.) Eq. R. 159; *Manigault* v. *Deas*, Ib. 283; 3 Dess. Eq. R. 417; 2 Strobh. Eq. 235; 2 McCord's Chy. 58.

HANDY, J., delivered the opinion of the court.

The appellant, as surviving partner of the mercantile firm of Block & Turner, filed this bill, for the purpose of subjecting the proceeds and income of certain property belonging to the appellee, Martha J. Cross, and held to her sole and separate use, to the payment of an account for goods and merchandise, sold to her.

The allegations of the original and amended bills, are in substance, that Mrs. Cross, in the month of December, 1851, came to reside at Monticello, in this State, with her family, consisting of five children and several servants,—having been brought there by her brother, Lucius A. Turner, appellant's partner, from the State of North Carolina, and opened a book-account at the store of Block & Turner, in her own name; that she was possessed of certain slaves, her separate property, which were brought with her, and in contracting said account, that she intended to bind her separate estate, and was trusted on the faith of it; that the account was opened by Turner, and kept by him in the books of the firm, and was continued until his death, and for a short time thereafter; that at the time of her removal to this State, Cyprian Cross, her husband, had left her, and gone to California, having been absent about two years, and did not come to this State until a year after her removal here; that Turner assisted his sister in the management of her business, and made all needful contracts for her, in

her name; that the articles furnished by the firm to Mrs. Cross, were necessary for the support of herself, her children, and servants; that after the husband's return from California, he bought articles at the store, but, by an arrangement between him and his wife and Turner, the account was continued in her name, and that the husband, on his own account and of his own means, paid the sum of $2450, being about the sum due for articles purchased by and for himself, the residue of the articles in the account having been chiefly, if not entirely, supplied to Mrs. Cross and her family and servants; that Block & Turner paid the expenses of bringing the slaves from North Carolina to Monticello, and the same are charged in the account; that both of the appellees have acknowledged the correctness of the account since the death of Turner, except one or two items, which were then left blank, but have since been filled up, the vouchers being then in the appellee's hands, and the amounts unknown to the appellant; and they proposed to pay the account out of Turner's interest in the firm, Mrs. Cross being entitled to the same under the will of Turner. It is further alleged, that it is the duty of the appellant to collect this debt, to enable him to pay off the debts of the firm, which are large; and discovery is prayed, as to the articles in the account, which were for the use of the slaves of Mrs. Cross, and when, where, and by what means, she acquired her separate estate.

The answer admits the removal of Mrs. Cross, and that she became a resident of Monticello, as alleged, and that her husband was absent in California, from the time of her removal, until his return, in the latter part of the year 1852; that her removal was by his consent, and that she is possessed of considerable separate property, principally slaves, which came to her possession in this State, since the passage of the Married Woman's Law of 1846;—denies that she ever intended to bind her separate property for the account of appellant, or that she ever obtained credit by that means, but admits that it was her intention to pay any just account which Block & Turner might have against her; denies that the separate property came to the appellee's possession in North Carolina, and alleges that it first came to Mrs. Cross's possession in this State, and after the year 1846; admits that, before her husband's return from California, she purchased goods from Block

& Turner; that the account was opened and kept by Lucius A. Turner, without consulting Block, and was continued until 1856, and that so much of the articles in the account as were not purchased by Cyprian Cross, for his individual use, were obtained for the use of Mrs. Cross, her children, and servants. The appellees deny that they ever admitted the correctness of the appellant's account; and allege, that at the close of the year 1852, Lucius A. Turner had in his possession a large sum of money belonging to Mrs. Cross, being the proceeds of the hire of her slaves, much more than sufficient to pay any just demand of the firm against her, and sufficient to pay for any goods afterwards purchased for her of the firm, without entering charges therefor on their books,—to wit, for the year 1852, $832; for the year 1853, $980; and for the year 1854, $1515; besides the sum of $125, due for the hire of one of her slaves by himself, for the year 1855; which sums remain due and unaccounted for by Turner;—and they charge that these sums were used by Block & Turner, about their business, except the sum of $400. They deny that there was any agreement, after Cyprian Cross's return, that the account should be continued in the name of Mrs. Cross, but state that he requested his accounts to be charged to himself, and not to his wife; they deny that Block & Turner paid the expenses of the slaves from North Carolina, or the bill for furniture charged; they claim that Block & Turner are indebted to Mrs. Cross three or four hundred dollars, for a slave, of her separate property, kept in their employment; they admit that some small part of the account was for articles furnished for her slaves, but state that they are unable to specify them.

The will of the mother of Mrs. Cross, which was admitted to probate in North Carolina, in the year 1849, bequeaths the property to Mrs. Cross as follows—" unto Etheldred J. Peebles, my executor, for the sole and separate use of my daughter Martha, wife of Cyprian Cross, during her natural life," with remainder to her children, &c. The said property to be free from the contracts, debts, or liabilities of said Cross; " but the profits, and use of the same, during her coverture, to accrue to the sole use of my said daughter." It provides for the appointment of another trustee in case of the death or resignation of the executor, and empowers Mrs. Cross, if she should desire to sell or exchange any of the pro-

perty bequeathed, to direct the trustee in writing, and that he should thereupon comply; but the property thus acquired to be subject to the trusts stated in the will.

Upon the final hearing of the case, on the pleadings and proof, the bill was dismissed, and from that decree this appeal is taken.

Several questions are presented by the pleadings, and have been argued by counsel. We will proceed to consider such of them as are material to the determination of the case as it is presented by the pleadings.

The first question arising is, whether Mrs. Cross had the power to subject her interest in the property bequeathed to her by her mother's will, by her personal contract, made with the intention of binding it.

It is to be observed, that the will in question was made, and the interest conferred by it took effect, in the State of North Carolina, and before the property bequeathed was removed to this State. Consequently the rights and powers derived from it are not to be governed by our laws in relation to the disposition of property held by *femes covert* to their separate use. For our laws have reference to such property acquired by married women in this State, and have no application to rights vested under the laws of other States. Our laws did not intend to interfere with such rights, or to impose restraints upon the exercise and enjoyment of them, when the property, to which they were attached by the laws of the State under which they were vested, might be brought into this State.

What right, then, was given to Mrs. Cross, apart from our statutes in relation to the separate estate of married women, and especially by the law of North Carolina?

By the terms of the will, the property is left to the executor, for the sole and separate use of Mrs. Cross during her life, remainder to her children; "but the profits and use of it, during her coverture, to accrue to the sole use of Mrs. Cross," with power to the trustee, upon her written request, to sell or exchange any of the property; the property thereby acquired to become subject to the same trust as that bequeathed. From this, it is plain, that "the profits and use" of the property, during coverture, are given to Mrs. Cross absolutely, and without any restriction, to her sole use. It is not a mere *power* as to the profits and use of the pro-

perty that is granted—it is an *estate* given to her. No restriction or condition whatever is annexed to the right given, and consequently the profits and use become her separate and absolute property by the terms of the will, with all the rights of disposition and of subjection to her debts incident to property of that nature. No question, therefore, can arise as to her power to alienate or charge the subject of the bequest in any particular mode; for no mode is indicated, and her right of property is absolute, and her power over it that of a *feme sole.*

There can be no doubt upon the rule of law established upon this point, either upon reason or authority; and it has been declared by this court, in the recent case of *Garrett* v. *Dabney,* 27 Miss. 335, 343, where the question was fully argued and considered. Indeed no doctrine of the law, about which there has ever been controversy, may be considered as more firmly settled than that in cases of this nature, where the instrument is silent as to the power over the property given, neither restricting it in any respect, nor prescribing the mode of disposition; the power of disposition is absolute, and the estate is that of a *feme sole.*

But it is sufficient, for the purpose of this case, that this is the settled rule in North Carolina, and therefore controls this case. *Frazier et al.* v. *Brownlow,* 3 Ired. Eq. 237; *Harris* v. *Harris,* 7 Ib. 111.

The profits and use of the property in question were, therefore, clearly capable of being charged by her for her debts.

The next question is, whether that interest was subjected to the debt of the appellant by the acts of the parties shown by the record; and this depends upon the intention of the party to be charged, which may be shown by her positive declaration, or be inferred from her conduct and the circumstances under which the debt was contracted. *Boarman* v. *Groves et ux.* 23 Miss. 280.

The answer denies that it was her intention to bind her separate property for the account, and there is no evidence that she declared that it was her intention to bind it; but it admits that she always intended to pay any just account the firm might have against her, and it is evident that she was aware that the account was opened at the store of Block & Turner, and that the goods charged in the account, or some of them, were received by her from the firm. If,

then, it was her intention to pay for goods furnished to her, how or by what means were they intended to be paid? The circumstances of the case appear clearly to show that the credit was obtained with reference to her separate property, and that she intended to make payment by that means, and that it was so regarded by the merchants with whom she was dealing.

It appears, by the evidence, that previous to the autumn of 1851, the separate estate of Mrs. Cross had been managed in the State of North Carolina, by the executor and trustee appointed by the will of her mother, he having charge of the slaves, receiving their hire, supplying her with money, and acting as her agent and trustee in providing for her support, and her husband having removed from that State to California. That trustee accounted in the proper court in North Carolina for his acts, and his accounts were settled, showing a small balance due him; and, upon application in behalf of Mrs. Cross, under the direction of the court, the property in his hands and the trust were transferred to her brother, Lucius A. Turner, who took upon himself the trust, and brought Mrs. Cross and her children to this State in the month of December, 1851. About the same time, or shortly thereafter, the slaves mentioned in the will were brought to this State. Upon her arrival at Monticello she commenced housekeeping, and appears to have been without money. Her husband was absent, and did not come to the place until about a year after her taking up her residence there. Her brother lived with her, and acted as her agent and trustee, hiring out her slaves and receiving their hire, making contracts for her, and attending generally to her business, so far as was necessary for the support of her family. He opened the account here sued for, with the firm of which he was a member, in her name, and the goods and matters of charge in the account, were for the most part such as were necessary and proper for her condition and for the support of her family. She appears to have had no other means but the property in question, and it is clear that she knew that the account was opened for her by her trustee and agent. He acknowledged that it was intended to pay the account out of her income, and it is claimed by the answer that the hires of the slaves for the year 1852 should have been applied to the payment of the debt at that time; and this goes far to show that the account was con-

tracted by her and her trustee with the expectation that it would be paid by the hire of the slaves.

It is clear that her trustee and agent intended that the account should be paid by means of her income from her separate property. He was intrusted by her with power to contract for her, and if it was his intention to bind her property, it is to be presumed that it was done by her consent. Her circumstances and situation alone, at the time she took up her residence at Monticello, a stranger, with a large family of children and servants, without money to purchase the necessaries for family subsistence, and having no means by which to support herself and family, except the income to accrue from the hire of slaves, and no other property to give her credit, render the probability very strong that her contract must have been made upon the faith of her income, and as the means by which they were intended by her, and expected by creditors to be paid. But when we consider that this was the intention of her agent and trustee, who made the contract in question for her, and in her name, and who was competent to act for her, and acted with her acquiescence in the matter, it is too clear for controversy, that her separate income was intended to be charged for the payment of the account during the absence of her husband.

Did this liability continue after her husband returned to his family?

It is alleged by the answer, that after Dr. Cross returned to live with his family, he repeatedly requested that his account with the firm should be kept in his own name, and not in that of his wife, and it is denied that there was any agreement that his account should be kept in the name of his wife. It is admitted that purchases for the family were continued after his return, and that the goods not purchased for his individual use, were purchased for the use of the family, wife, children, and slaves. And it appears that he paid on the account, an amount about equal to the articles which, from their nature, were probably purchased by him for his individual use. The bill alleges that this payment was made on this account, and the answer does not deny it. It is not attempted to subject the estate of Mrs. Cross, further than for the items in the account contracted on her account; and, therefore, under the circumstances, the fact that articles purchased by Dr. Cross for his individual use,

were charged in the account, cannot affect the appellant's right, if the articles furnished to Mrs. Cross, or for her family, were intended to bind her separate estate. It may be true that the purchases of Dr. Cross for his individual use, were improperly charged to the account of his wife; but this would not affect the account, so far as the charges were properly made against her.

It is evident, and, indeed, appears to be admitted by the answer, that the purchases for the family were continued after Dr. Cross's return, in the same way as at the commencement of the account. The charges were made by the trustee and agent in his name, as before; and if it was intended, at the commencement of the dealing, that her separate estate should be charged with the account, there appears to be nothing to show that there was any change in the matter. When the account was made out and handed to the appellees, no objection was made to it on the ground that the articles furnished, and charges made, after the return of Dr. Cross, were charged to the account of his wife. On the contrary, it is proved to have been admitted by them to be correct, except some small articles. Indeed, it appears to be manifest, from all the evidence and the circumstances of the case, that the account was contracted with reference to the separate income of Mrs. Cross, and that it was expected and intended to be paid by that means. Her situation and circumstances, and those of her husband, the peculiar nature of her property, the acts of her trustee and agent in relation to the account, and her recognition of these acts, appear to render this conclusion unavoidable. And it would appear that this controversy was occasioned, not really from the fact that it was not intended that Mrs. Cross's separate income should be charged with the payment of the account of the appellant, but from the fact that her trustee had failed to apply the funds which came to his hands to that purpose, as was his duty.

We, therefore, think that the charges in the account for the use and benefit of Mrs. Cross, her family and slaves, to the exclusion of those for the individual use of Dr. Cross, should be paid out of the profits and income, the separate property of Mrs. Cross.

The next question arising is, whether the account is sufficiently proved?

It is shown by the testimony that it was presented both to Dr.

Cross and to Mrs. Cross, and was admitted by both to be correct, except some small items.   The charges for expenses of bringing the slaves from North Carolina, and for furniture purchased for Mrs. Cross, were not complete as to their amounts at that time, but they are fully proved to have been paid by the firm of Block & Turner.   The former charge was necessary, in order to give Mrs. Cross the benefit of the hire of the slaves, and the latter was a necessary expenditure for the family.   It is further proved that Dr. Cross offered to pay the account out of the interest of Turner in the firm, which was left to Mrs. Cross by the will of Turner.   This evidence is certainly sufficient to establish the account, leaving it open, to ascertain and separate from it the items purchased by Dr. Cross for his individual use; and that will be proper to be done by the commissioner, who may be appointed to ascertain and report the amount due from Mrs. Cross on the account.

But it is insisted that the account has been paid by means of the moneys collected by Turner for the hire of the slaves.

The testimony upon this point is that of James M. Turner, which is, in substance, that having been informed by Block that Mrs. Cross was largely indebted to the firm, he inquired of Lucius A. Turner about it, in his last illness, who told him that although the books showed that she was indebted, yet in truth she did not owe anything, and mentioned in that connection something about the hires of her slaves.   This witness further states, that he was executor of Lucius A. Turner, and as Mrs. Cross was residuary legatee by his will, and entitled to Turner's interest in the firm, he proposed to Block to permit Mrs. Cross's account to stand until the partnership was settled, and if her interest therein was not sufficient to cover her indebtedness, that he, the witness, would pay whatever balance was found due.

It appears that, although the amount which Lucius A. Turner had collected of the funds of Mrs. Cross, was kept by him in a private book in his possession, yet no entry of it was made on the books of the firm, and especially was no credit for the amount given on account of Mrs. Cross, and there is no evidence whatever, or admission, to show that the amount was applied to the use of the firm.   He had collected the money as trustee and agent for Mrs. Cross, without any connection with the business of the firm of which

he was a member; and a simple declaration that she owed the firm nothing, because he, as trustee, had collected funds belonging to her, would not bind the firm, without an admission, or some other evidence, that it had been applied to the use of the firm.

The circumstances show that this was the character of the declaration; for the witness subsequently states that he, being executor of Turner, proposed to Block to let his account stand until the settlement of the partnership, and if her interest therein was not sufficient to pay the account, that he would pay the balance. If he really understood his testator to say, that the account had been paid by applying the funds of Mrs. Cross in discharge of it, it is strange that he should propose to pay it again. His proposition is altogether inconsistent with the idea that the account was paid by the appropriation of Mrs. Cross's funds to the use of the firm. And taking the statements of the witness in connection with other facts shown in the case, the true sense of the declaration of Turner must have been, that Mrs. Cross would have to pay the firm nothing, because he had bequeathed her his interest in the firm, which would be equivalent to what she was indebted to it on her account. This is rendered still further probable by the fact that he acknowledged his indebtedness to her, which would not have existed if he had applied her funds in his hands, and which were the only ground of his indebtedness to her, to the payment of the account of his firm against her. But be this as it may, the mere declaration that she owed the firm nothing, by reason of his having collected her funds as trustee, in the absence of all evidence to show an appropriation of the funds to the use of the firm, is incompetent to bind the firm, and to prove that the account was paid.

In conclusion, we are of opinion that the fund due Mrs. Cross for the hire of the slaves in question, is liable to the payment of the sum which shall be found due the appellant on the account sued for, excluding from it all charges for articles purchased by Dr. Cross, for his individual use, and applying the credits stated to his account, and giving her credit for the value of the services of the boy alleged to have been in the employment of the firm, if it shall be ascertained that the boy was employed by the firm.

The decree is reversed, and the cause remanded for further proceedings.