## JOHN FRIERSON *v.* LOUISA WILLIAMS ET AL.

1. MARRIED WOMAN. *Separate estate under a will. Equitable charges.*
   A married woman holds land in this State, which is devised to her "sole and separate use" wherein her husband "shall have no right or interest," under the will alone; and her power to charge it is determined, not by the statute, but by the general principles of equity in relation to such estates.

2. SAME. *Absence of trustee. Power to charge. The statute inapplicable.*
   The failure of the will to name a trustee of the legal title does not subject her estate to the operation of the married woman's statute, but she holds the land devised free from the control of her husband, and with power to charge it as a *feme sole*, according to the provisions of the will.

3. CONFLICT OF LAWS. *Lex rei sitæ. Lex loci contractus. Lex domicilii.*
   A promissory note made by such wife as surety for her husband, in Louisiana, where she resides, although void by the law of that State, can be enforced against the land in this, if she contracted with reference thereto, and intended to charge it with the debt.

ERROR to the Chancery Court of Coahoma County.

HON. W. G. PHELPS, Chancellor.

*Shelton & Shelton,* for the plaintiff in error.

1. Mrs. Williams's interest in the land and its use, her powers over both, and her contracts and liabilities with reference thereto are not controlled by the Mississippi statutes relating to married women and their property, but by the will and the

rules of law and equity applicable to her rights and powers thereunder. 2 Story Eq. Jur. § 1380. In support of this principle and its application to this case, the counsel urged these points: (1) The will conveys to the wife a moiety for her life, to her " sole and separate use," separate and apart from her husband, in which her husband " shall have no right or interest," with remainder to her daughters. This makes her as to this property a *feme sole*, with all the powers of an unmarried woman in reference to it; and it takes from the husband all his rights and powers at the common law, such as his joint seizure with her; his freehold estate; his curtesy before and after her death; the liability of his curtesy for his debts; his ability to sell it and transfer possession; and his right to the rents and profits. See 1 Wash. Real Prop. p. 140, § 47. It also takes from him all the rights and powers conferred by the Mississippi statutes, such as curtesy, both before and after her death; his right to joint occupancy with her, to manage the estate, to make rent-contracts and collect rents; his power to create a debt against the estate by buying supplies, to defeat her sale by refusing to join in her deed and thus defeat all alienation, since she could not make a will. *Garrett* v. *Dabney*, 27 Miss. 335, 344. (2) On the face of the Mississippi statutes, there is no prohibition against the equitable liability of a married woman's separate property in a case like this, because the attempt in this case is not to enforce the husband's debt against her property, but her own debt; it is not to enforce a liability created or attempted to be created against her property by the husband, but an equitable liability, created, if at all, by herself; it is not to enforce a sale, conveyance, mortgage, transfer, or encumbrance by him; it is not to enforce either of these made by any person, for the equitable liability which we seek to establish is neither of the five: a liability is not an encumbrance.

2. The statutes being out of the case, the will empowers the wife to make the land and its products liable in equity for her debts. It makes her as to this property a *feme sole*. To create such a power in a wife no technical words are necessary. If the testator's intent is clear, that is enough. Words much less potent have conferred *feme sole* powers. These

have been held sufficient: " to her sole use or disposal," " to her sole use and benefit," " to her use during her life, independent of her husband," " to be her pin-money," " stock given to her, not to be disposed of by her husband," " for her benefit, independent of the control of her husband," " rents and profits to her for her separate use " (*feme sole* as to the rents and profits). 2 Story Eq. Jur. §§ 1381, 1382; *Hulme* v. *Tenant*, 1 Bro. Ch. 16; *Hamilton* v. *Bishop*, 8 Yerger, 33; *Johnston* v. *Ferguson*, 2 Met. (Ky.) 503; Clancy on Husband and Wife, 251.

3. Mrs. Williams, having made the note as security for her husband, with the intent to make her separate estate and its revenues liable, and to enable her husband to buy future supplies and borrow money thereon, and Frierson having furnished these relying on that note, her life estate and its income are, by the principles of equity, liable for it. The difference between the estate of a married woman held separately from her husband, under a statute like ours, and her estate held separately under a will or grant, is that the former is a legal, the latter an equitable estate; as to the former, a liability is a legal liability, and may be enforced against her legal estate by suit, judgment, and execution, — a legal remedy on a legal contract against a legal estate. To these the statutes apply, and they do not purport to apply to any other separate estates. But to the equitable estates and liabilities under powers conferred by a will, the statutory rules and remedies cannot apply; the will and the principles of equity are our only guides as to her rights and powers over her separate estate and liabilities thereof created by her. English authorities have established the rule for centuries; it has been recognized in Mississippi and other States when there were no such statutes in the question. *Wynne* v. *Wynne*, 23 Miss. 251; *Frazier* v. *Brownlow*, 3 Ired. Eq. 237; *Harris* v. *Harris*, 7 Ired. Eq. 111. But does that capacity to create an equitable liability remain, notwithstanding our statutes, where a will gives her the estate and use, with the powers of a *feme sole* in reference to it? Since the married woman's laws, this equitable liability has been often sustained. *Garrett* v. *Dabney*, 27 Miss. 335; *Block* v. *Cross*, 36 Miss. 549; *Boarman* v. *Groves*, 23 Miss. 280; *Clark* v.

*Slaughter*, 38 Miss. 64; *Bank of Louisiana* v. *Williams*, 46 Miss. 618; *Musson* v. *Trigg*, 51 Miss. 172; *Frazier* v. *Brownlow*, 3 Ired. Eq. 237; *Harris* v. *Harris*, 7 Ired. Eq. 111.

4. It is not equitable to hold that because she got direct title without a trustee, the equitable liability which we invoke fails to be applicable; for her estate is not merely a legal title, but is made by the will an estate held by her separate and apart from her husband and as a *feme sole*. That feature of the estate a court of law cannot protect or enforce: a court of equity can. But if such an estate could be a merely legal estate, equity could hold it subject to her debt for which she had made it equitably liable; for by the will she is made *sole* as to that property, and therefore has as to it all the powers of a *feme sole* which are not prohibited by the will. *Block* v. *Cross*, 36 Miss. 549; *Clark* v. *Slaughter*, 38 Miss. 64; *Bank of Louisiana* v. *Williams*, 46 Miss. 618; *Musson* v. *Trigg*, 51 Miss. 172; *Frazier* v. *Brownlow*, 3 Ired. Eq. 237; *Harris* v. *Harris*, 7 Ired. Eq. 111; *Shirley* v. *Shirley*, 9 Paige, 363; *Jamison* v. *Brady*, 6 Serg. & R. 466; *Abrams* v. *Whitmore*, 4 Desauss. 251; 1 Bishop on Married Women, § 792, 794, 800–803; 2 Story Eq. Jur. § 1380; Tyler on Infancy & Coverture, § 303.

5. At least the products of the life estate should be held liable. A wife holding personal property in her own right, such as crops of her separate estate, is under no disability as to them, but has power to sell, control and appropriate them, and may bind them in equity for payment of her debts; otherwise she could make no disposition of them, or pay her debts for supplies. *Block* v. *Cross*, 36 Miss. 549; *Clark* v. *Slaughter*, 38 Miss. 64.

6. The conclusion from the foregoing principles is not changed because the note was made in Louisiana by a Louisiana wife. (1) If the note is void as a personal obligation in Louisiana, so it would be in Mississippi, if made here by a Mississippi wife; yet here the equitable liability of her Mississippi lands would be sustained. Inter-State courtesy does not demand that we shall exempt the Mississippi lands of a Louisiana wife when we would not exempt those of a Mississippi wife. Wharton Confl. Laws, §§ 278–280. It is only the per-

sonal capacity that is controlled by the *lex domicilii*, but the *lex rei sitæ* gives or withholds the capacity to charge or alienate land, and prescribes modes of doing it. The same rule applies to rents, mortgages and liens. Wharton Confl. Laws, §§ 272–277, 286, 291 ; Story Confl. Laws, §§ 363–365, 424. (2) Mrs. McGuire's will was made at her home in Mississippi, by a citizen and resident thereof, where she died, and where her will was proved, recorded and executed. Mrs. Williams attempted to execute her *feme sole* powers, created by it, on Mississippi lands. The non-residence of a donee of powers created by a will on Mississippi immovables neither defeats nor suspends the powers, nor subjects the execution of them on Mississippi lands to the laws of any other State or nation.

*George Winston*, on the same side, filed a brief, which the reporter has been unable to obtain.

*Frank Johnston*, for the defendants in error.

1. Are Mrs. Williams's powers of charging or alienating this property governed by the statutes of this State or by the general principles that apply to separate estates of married women, by which is meant equitable estates ? The whole doctrine of the powers of married women in equity grow out of the trust nature of the estate. These powers were never *legal*, but equitable, and had no existence in connection with legal estates. A grantor conferring a legal estate on a trustee for the married woman invested her with certain powers over the equitable estate which a court of equity recognized, and permitted her to use. But nothing that she did, either by changing, or conveying by appointment, had any operation beyond the equitable estate. The trustee held the legal title and was the owner of the estate at law. This whole doctrine, therefore, arising out of equitable estates, is strictly limited thereto. In treating of the subject of the equitable powers of married women, Bishop says it only applies to equitable estates. 1 Bishop on Married Women, §§ 792, 793, 794. These estates are created by an instrument vesting the legal estate in some third person, and the power of the *feme covert* over such property is in the nature of a power of appointment. 1 Bishop on Married Women, § 795 and note 1 ; *Albany Ins. Co.* v. *Bay*, 4 Comst. 9. Again this author says, the expression " sepa-

rate estate " used in discussions of this subject, " always refers
to an equitable estate held by somebody in trust for a married
woman." 1 Bishop on Married Women, § 795; *Todd's Ap-
peal*, 24 Penn. St. 429. It only applies to equitable estates
held in trust for a married woman. *Musson* v. *Trigg*, 51 Miss.
172; *Hackett* v. *Metcalfe*, 6 Bush, 352; *Johnston* v. *Jones*, 12
B. Mon. 326; *De Vries* v. *Conklin*, 22 Mich. 255; *Richardson*
v. *Stodder*, 100 Mass. 528; *Garrett* v. *Dabney*, 27 Miss. 335.

2. The inquiry next arises, whether this is a legal or equit-
able estate. By the devise under which Mrs. Williams holds
the property, or rather by which she acquired it, the whole
estate is vested directly in her. There is no trustee; there
is no creation of any equitable estate, nor the grant of any
special equitable powers of charging, alienating, or appoint-
ing. It simply gives her the property as her own, using the
words for " her separate use." The testatrix intended to
confer upon her, not only the equitable ownership, but the
legal title and estate. The devise was to her directly. Under
the statute, she undoubtedly had the full capacity to take and
hold the legal title and estate. The statute embraces all modes
of acquisition, — by will, descent, distribution, deed, recovery
or otherwise. Code 1871, § 1778. As the testatrix devised
to her directly the legal title and estate, as well as the
actual ownership, and as Mrs. Williams had the capacity
to take what the will attempted to confer, this is in every
respect a legal and not an equitable estate. In order to work
out the idea of an equitable estate, it is said that her husband
is her trustee, as she could not be her own trustee. A court
of equity has sometimes held the husband's legal estate charged
with a trust in favor of the wife; but it was because there
was no trustee named, and because the wife could not at com-
mon law hold a legal title or estate. In a case where the
conveyance of the legal title is to the wife, and where she has
the legal capacity to hold the legal title, would a court of
equity divest her legal title by declaring it in her husband as
trustee, and change the estate created by a grantor or testator
into an equitable estate? Unless this can be done, then
the estate in this case is a legal and not an equitable
one. Mrs. Williams is legal owner, and not a *cestui que*

*trust;* her powers are legal, and not equitable. And, lastly, as there is no specific grant of powers in the devise creating the estate, the statute, and not general equity principles, furnishes the rule for the solution of this case. The argument that the husband's statutory agency is limited by implication, on construction of this will, is not intrinsically sound; and if it were, it could not affect the question of Mrs. Williams's capacity to charge the property with her debts. Granting the husband's statutory agency, it by no means enlarges the statutory powers of the wife. The use of the words, for her "separate use," does not change the character of the estate, for those terms are used in the statute. The statutory capacity of Mrs. Williams to take this legal estate is not fully considered in counsel's argument that the husband will be treated as her trustee. A court of equity never indulges in this sort of fiction, except where there would be a failure of an estate, or in case of the wife's interest, where she could not take the legal estate. At common law, the legal estate, where there was no trustee, went to the husband, and in a court of law she had no rights. In this condition of things, a court of equity declared the husband to be a trustee. But where she has as perfect a legal capacity as her husband to own and hold legal estates, there is neither place nor reason for this contrivance. The estate, therefore, becomes a legal one in every respect. Equitable estates may still be created independently of the statute, but not by conveyances of legal estates directly to the wife. Even, however, if an equitable estate is created by an instrument that is silent on the subject of special powers, either of charging or of alienation, the case of *Dibrell* v. *Carlisle*, 48 Miss. 691, is conclusive in support of the position that the statute furnishes the test of Mrs. Williams's powers. In that case, there was a trustee and an equitable estate. It was argued by counsel that she had the powers of a *feme sole* on general equity principles, as the instrument creating the estate prescribed no limitations of her powers. The question of her power of binding the estate by conveyance, as well as of charging the estate in equity for debts, was considered and decided. In *Musson* v. *Trigg*, 51 Miss. 172, there was a trustee, and an express

grant of broad and specific powers to the wife. In a word, she was made a *feme sole* as to the separate estate conferred on her by the terms of the settlement.

3. The note of Mrs. Williams for the husband's debt, made in Louisiana, by the *lex loci contractus* is absolutely null. *Bartington* v. *Bradley*, 16 La. An. 310; *Summers* v. *Brannins*, 22 La. An. 386; *Koechlin* v. *Thontke*, 26 La. An. 737. Being thus void where made, it can have no validity elsewhere. The case falls within the general principle. Her power is not to be measured by Mississippi law as to property in this State. The law of the domicile as to majority or minority governs, in respect even to property situate in another territory. Judge Story says: "If by the law of the place of his original domicile a person cannot make a will of his property before he is twenty-one years of age, he cannot, if under that age, make a valid will even of such property as is situate in a place where the law allows persons of the age of fourteen years to make a will of the like property. So, if by the law of her original domicile a married woman cannot dispose of her property except with the consent of her husband, she is equally prohibited from disposing of her property situate in another place, where no such consent is requisite." Story Confl. of Laws, § 52. On the general principles governing such contracts, see *Brown* v. *Freeland*, 34 Miss. 181; *Carroll* v. *Renich*, 7 S. & M. 798; *Ivey* v. *Lalland*, 42 Miss. 444. But this is not technically a case of the conveyance of real estate. The effort is to reach the land by enforcing the obligation of the wife for the husband's debt. There is no liability of the wife underlying the note and distinct from it. Her liability begins and ends in the note, which is void. If it is said that there was an intention to create an obligation enforceable against Mississippi property, then no such intention can be imputed to a note absolutely void by the law of the place of its execution, and known by all the parties to be a nullity.

GEORGE, C. J., delivered the opinion of the court.

The plaintiff in error filed his bill in the Chancery Court of Coahoma County against John Williams and his wife for the purpose of collecting out of the separate estate of Mrs. Wil-

liams a note for six thousand and fifty dollars, made by Williams and wife, in February, 1873, payable to the order of Williams, the husband, and by him indorsed to the plaintiff in error for money then advanced by the latter to said Williams. The note was made at New Orleans, in the State of Louisiana, where Williams and his wife reside. The property sought to be charged with the debt is land situated in Coahoma County, and is the separate estate of Mrs. Williams, under a devise made to her by her sister, Mrs. McGuire, who died in 1863. By her will she provided as follows : " My whole estate, real and personal, shall go to my sisters, Ellen Mayes, wife of R. B. Mayes, and Louisa Williams, the wife of John Williams, for and during their natural lives ; and this bequest is to their sole and separate use, in which their husbands respectively shall have no right or interest." The will then proceeds to dispose of the remainder, after the termination of the life estate, to the children of the two devisees.

The object of the bill is to enforce collection of this note out of the land of Mrs. Williams, devised under this will ; and the position of the complainant is, that Mrs. Williams holds this property as her separate estate by virtue of the will alone, and unaffected by the statutes of this State on the subject of the property of married women ; and that the power of Mrs. Williams to charge this separate estate is to be determined, not by the provisions of those statutes, but by the general principles of equity in relation to the separate estates of *femes covert*, held under settlements, or other instruments. On the other hand, it is contended that the estate devised by the will is a legal estate, and the wife's power over it, in the absence of any specified grant of larger powers in the will, must be regulated by the statutes alone ; and that the doctrines of courts of equity in relation to the separate property of married women are applicable alone to equitable estates.

It has heretofore been settled in this State that the statutes on the subject of the property of married women do not fix and regulate the powers of *femes covert* as to equitable separate estates held by them. *Musson* v. *Trigg*, 51 Miss. 172 ; *Doty* v. *Mitchell*, 9 S. & M. 435 ; *Montgomery* v. *Agricultural Bank*, 10 S. & M. 566 ; *Andrews* v. *Jones*, 32 Miss. 274 ; *Block*

v. *Cross*, 36 Miss. 549. We think it equally clear that the same rule should apply when the instrument creating the separate estate fails to appoint a trustee for the wife, whereby her estate is legal, and not equitable. Prior to the enactment of the statute protecting married women in their property, this will would have vested in Mrs. Williams a separate estate to her sole use, and free from the control of her husband. And under the rules of the Chancery Court in England, recognized by the latest cases in this State, the wife would have had the power of charging her estate, as if she had been a *feme sole*. *Block* v. *Cross*, 36 Miss. 549 ; *Garrett* v. *Dabney*, 25 Miss. 335 ; *Musson* v. *Trigg*, 51 Miss. 172 ; *Levy* v. *Darden*, 38 Miss. 57. The statute was designed, not to restrict, but to enlarge the rights and powers of married women as to property owned by them at the time of their marriage, or subsequently acquired. It secured her property to the wife by cutting off the marital rights of her husband, as they existed at common law. It was designed to operate only when, by the terms or mode of the acquisition of property by the wife, the husband would, as husband, acquire either the entire or a partial interest in it ; and as to that property, to fix and secure the rights of the wife and her dominion over it. It was no part of the purpose of the statute to interfere with the recognized power of the wife to acquire and hold a separate estate under instruments creating it according to the rules then recognized by courts of equity. As to such separate estate, the statute is silent, and left the wife's interest to be fixed and regulated according to the terms of the instrument under which she claimed.

The will of Mrs. McGuire secures to Mrs. Williams a separate estate, which a court of equity would recognize and protect if our statutes on the subject had never been passed. In that case she would have had the power to charge the estate by her contracts, according to the rules which courts of equity had recognized and established in relation to such estates. The fact that there is no trustee appointed to hold the legal title would have made no difference. A court of chancery would have treated the husband as trustee (*Kenley* v. *Kenley*, 2 How. 751), and, at all events, would secure her the rights

intended by the testatrix. That the statutes of the State have enlarged her ability to take the legal title can make no difference. To hold that it would diminish her rights and powers would be to make the statute work an injury instead of a benefit to the wife. These views are in accordance with the opinions of the Supreme ·Court of Alabama. *Pickens* v. *Oliver*, 29 Ala. 528 ; *Cannon* v. *Turner*, 32 Ala. 483.

There is nothing in the statute prohibiting these settlements to the separate use of the wife. On the contrary, the plain intent of the statute is to secure her a separate estate where the instrument under which she derives title would not without its aid produce that effect. If it be held that the statute intended to regulate her rights when there is a settlement securing her a separate estate, it would in effect destroy her capacity to take under a settlement, there being nothing, in that view, which could be regulated by such an instrument. There is as little foundation for the view that the statute intended to regulate her power of disposition, when the instrument creating the separate estate failed to point out any specific mode of alienation ; for under the later cases in this State no mode of disposition is necessary to be specified in the settlement, the power of disposition being that of a *feme sole,* and resulting not from an express grant of it *eo nomine,* but from the fact of ownership.

But it is said that the powers of the wife as to her separate estate were only conceded when the estate was equitable. We do not perceive the force of the distinction. The wife's power of disposition relates to her ownership, not to the nature of her title, and it is not seen how her power would be diminished by the fact that she had a complete legal title and full ownership instead of a mere equity. The inquiry on this point is as to the ownership of a separate estate by the wife, not as to the nature of the title, whether legal or equitable. When she has ownership, then, as an incident to it, she has the *jus disponendi.* She is never obliged to look to the statute for her power to contract and charge her estate except when she must look to it for her title. Here the wife need not refer to the statute. The devise is to her sole and separate use, in which her " husband shall have no right or interest." The

words employed not only indicate her separate right, but exclude all right or interest in the husband. All his rights, of whatever nature, including his right of management and control, are expressly excluded.

It is next insisted that by the law of Louisiana the promissory note of the wife, made as surety for her husband, is void for want of the capacity of the wife to enter into such a contract, and that, being void by the *lex loci contractus*, it is void everywhere. This position is true, if the giving of the note has no other effect than what it purports to have on its face, viz., a personal obligation of the wife. But it is charged in the bill and admitted by the demurrer, that at the time this note was made in Louisiana the wife had a separate estate in realty, situated in this State, and that she contracted with reference to this separate estate, and intended to charge it by the promissory note in controversy. Whether this purpose can be carried out with reference to realty here, notwithstanding the fact that the note is void by the law of Louisiana, is the question presented for our consideration. The note, if made here, would be equally void by our laws to bind the wife personally ; yet, notwithstanding this, it would be held, if made with the intent and purpose alleged in the bill, to be a valid charge against her separate estate situated here.

It is generally true that the capacity of a married woman to make a contract will.be determined by the law of her domicile ; but this is not the rule when her contract relates to her estate in realty, situated in another jurisdiction. Judge Story says : " The general principle of the common law is that the laws of the place where such [immovable] property is situate exclusively govern in respect to the rights of the parties, the modes of transfer, and the solemnities which should accompany them. The title, therefore, to real property can be acquired, passed, and lost only according to the *lex rei sitæ.*" Story Confl. Laws, § 424. And quoting from Sir William Grant : " The validity of every disposition of real estate must depend upon the law of the country in which that estate is situated ; " he says :. " The same rule would also seem equally to apply to express liens and to implied liens upon immovable estate." Mr. Burge, as quoted by Judge Story, in a note to § 445 of the

same work, says : " The power to alienate immovable property
by contract was a quality impressed on the property ; that the
law from which it was derived, or by which it is regulated, was
a real law ; and that the existence of this power and the
validity of its exercise must be decided by the law of the
country in which the property was situated." And it is said
by a learned author: "No sovereignty can permit the intru-
sion on its soil of a foreign law. Such a law may be accepted
by comity in cases in which a contested issue, the law appli-
cable to which is foreign, comes up for determination in a
home court. But the imposition of any other law than the *lex
rei sitæ* as to property, would be to give foreign subjects and
foreign laws an absolute control, unchecked by any discretion
of the home courts, over a subject-matter essential not merely
to the independence, but the vitality of the state. . . . The
mischief is cured by the adoption of the rule *lex rei sitæ regit;*
whoever may be the owner, or wherever the contract was
made, the law of the land reigns. No other law, either as to
the transfer or control of the property, is to intrude." Whar-
ton Confl. Laws, §§ 278, 280. These rules apply to marital
rights in realty. Judge Story, after speaking of the rights of
husband and wife as to personal property situated beyond the
matrimonial domicile, says : "But real or immovable property
ought to be left to be adjudged by the *lex rei sitæ* as not
within the reach of any extra-territorial law " ; and in *Vertner*
v. *Humphreys*, 14 S. & M. 130, 143, this court said that:
" As to immovable property, the law of the place where it is
situated fixes the rights of husband and wife in it."

The application of these principles will furnish a safe solu-
tion of the question under consideration. The capacity of
Mrs. Williams to take this property, and her rights and pow-
ers over it, are derived from and regulated by the law of this
State. Her power of disposition and dealing with it are, by
our laws, impressed on the property itself. As to none of
these things has the law of Louisiana the slightest influence.
If she had made a contract expressly disposing of this prop-
erty, it will not be denied that, though void by the laws of
Louisiana, either for her want of capacity to act, or the want
of the observances of the forms and solemnities prescribed by

those laws, yet, if valid by the law of this State, it would have been good. The contract here is not strictly of that character, yet the making of it is the exercise of the power of the wife to dispose of her estate ; for whenever that power is denied, the power to charge it with her debts is denied also, and the charge can only be made effectual by the actual or threatened alienation of the estate, under a decree of the Chancery Court. The charging of her separate estate for the payment of money does not pass any actual interest in the land, but it is the first and essential step for a judicial disposition of the estate to satisfy the charge, and the exercise of a power of administration and control over it, which, as we have seen, is governed solely by the *lex rei sitæ.* To show that this is its true nature, we have only to suppose that, by the law of Louisiana, the note was a charge on her realty situated there, and was not by our law a charge on the realty situated here. In such a case, it would be evident that an attempt to enforce it here against her real estate could not succeed. If success could attend such an effort, then the several rights and powers of husband and wife, as to realty, would not be fixed and governed by the laws of the *situs ;* and the act of a wife, done in a foreign State, would have the effect of disposing of her realty here, contrary to our laws.

But there is no real conflict between the laws of Louisiana and Mississippi in reference to the contract. By both laws the note is void for what it purports to be on its face, — a personal obligation of the wife ; and it is void for the same reason in both, viz., the personal incapacity of the wife. The difference between the two laws is as to the effect on the real property of the wife in the respective jurisdictions of the two States, and as to which, as we have above seen, the law of the State in which the realty is situated is the exclusive test. If the note had not been void by our laws, as the personal obligation of the wife, we should nevertheless, out of comity to a sister State, adjudge it void to that extent, if attempted to be enforced here ; but the principle of comity does not require a State to regard the laws of any other State, so far as they may affect contracts in relation to real estate situated in the former State.

*Decree reversed, demurrer overruled and cause remanded.*