Hon. FÉLIX P. POCHÉ,
Hon. ROBERT B. TODD,       } *Associate Justices.*
Hon. CHARLES E. FENNER,
Hon. LYNN B. WATKINS,

---

### No. 9933.

SUCCESSION OF MRS. CHARLES A. LARENDON.—ON OPPOSITION TO

ACCOUNT.

The rights and obligations arising under acts passed in one State to be executed in another, respecting the transfer of *real* estate in the latter, are regulated in point of *form, substance* and *validity* by the laws of the State in which such acts are to have effect.

An act of donation drawn up in Louisiana, in the form in which such acts are required to be put in Georgia, to convey real estate in that State, is valid, although not passed before a notary and two witnesses, as the laws of this State prescribe, under pain of nullity.

Under the law of Georgia, a donation is presumed to be accepted unless the contrary is shown.

Although, in general, a case will not be remanded for the reception of evidence which could have been and was not offered, parties, in exceptional instances, may be allowed a re-

manding where the rulings of the trial judge during the proceeding are at variance with his finding on the merits. and the party asking the remanding abstained from offering evidence which the judge would have ruled out as superfluous.

APPEAL from the Civil District Court for the Parish of Orleans.
Tissot, J.

*A. Brieugne, R. T. Beauregard* and *P. A. Ducros* for the Under Tutor, Opponent and Appellee :

Both the form and effect of an ante nuptial gift of real estate, situated in Georgia, are governed by the law of that State.  Georgia Code, § 8, 1782, 1950, 2741, 2692, 2657, 2658, 2659, 2660, 58, 59, 2706;  Story, § 438, 444, 444a, 475 ;  Fœlix, No. 60, 72, 73, 85 ;  27 Texas, 38 ;  1 Zachariæ, § 31.

This gift, when clothed with the form prescribed by that law, is valid, by the comity of nations, in the State of Louisiana, no positive rule whereof denies or restrains the operation of said foreign law.  Story, §§ 29, 30, 31, 35, 38 ;  Fœlix, Nos. 11, 12, 13, 14, 15, 59, 61 ;  Wheaton, Int. Law, ed. 1863, p. 162 ;  Rorer, Interstate Law, pp. 167, 169, 170 ;  D. 1, 3, 25 ;  Georgia Code, § 9 ;  C. C. 10 ;  1 Marcardé, Nos. 79, 245 ;  1 Zachariæ, pp. 56, 78 ;  18 Merlin, Rep. *verbo loi,* § VI, No. VII ;  3 Larombière, p. 37 ;  5 N. S. 141 ;  5 Ann. 517 ;  2 Ann. 508 ;  9 Ann. 166 ;  Inst. B, 1, 2, par. 1 and 2.

Parol evidence is inadmissible in Georgia and in Louisiana, even when unobjected to on trial, to show the conventional revocation or avoidance of such a gift.  Georgia Code, § 2706 (a) ;  Story, § 365 ;  C. C. 2275, 2276 ;  9 R. 416 ;  12 Ann. 56 ;  3 M. 253 ;  23 Ann. 747 ;  24 Ann. 401 ;  5 Larombière, p. 81 ;  5 Marcadé, pp. 148–9 ;  9 Toullier, Nos. 36, 37, 38 ;  Dantin, ch. 1, Nos. 9, 35 ;  24 Merlin, verbo *Preuve,* §§ 2 and 3, art. 1, Nos. 28, 29, 30 ;  5 Zachariœ, p. 695.

Evidence of the admissions or declarations of a dead person, testified to by her surviving husband, in his own interest, and unsupported by any proof *aliunde,* is entitled to little or no weight.  10 L. 355 ;  14 Ann. 275, 763 ;  24 Ann. 604 ;  7 R. 112 ;  10 Ann. 279 ;  6 Ann. 114.

Personal estate is subject, as regards the rights thereto of the dead owner's heirs, to the law of the former's place,of domicile.  Story, § 481 *et seq;*  Fœlix, No. 37.

*White & Saunders* and *A. J. & Omer Villeré* for the Tutor, Appellant :

Under Art. 10, R. C. C., where a contract is made in Louisiana to be executed in Georgia, the validity of the form of the contract is determined by the law of Louisiana.

The State of Louisiana has its peculiar policy in regard to donations, and refuses to recognize their existence unless they are both made and accepted in a prescribed manner.  Accordingly, a Louisiana court will not disregard this policy and enforce a donation, made here and to a citizen of this State and not in the prescribed form.

The evidence shows, that even considered as a Georgia contract, the donation was incomplete from express refusal to accept.

The lower court having ruled at the trial that the donation was a Louisiana contract, and so led the appellant to omit to introduce evidence bearing on its validity viewed as a Georgia contract, and having then held in its judgment that it was a Georgia contract ; under these circumstances, this Court, if not satisfied that the donation was invalid even as a Georgia contract, is bound, in fairness to the appellant, to remand the case to admit further evidence as to the validity of the contract under the law of Georgia.

The lower court erred in excluding the testimony of the husband for or against his wife after her death.

The opinion of the Court was delivered by

BERMUDEZ, C. J.  The main question presented in this case is

whether an act of donation drawn up in Louisiana, according to the law of Georgia, designed to convey real estate in that State, is a nullity, because not passed before a notary and two witnesses and not accepted in terms, as the law of Louisiana requires.

The next question is, whether if such act be valid, the donation presumed to have been accepted by the law of Georgia, until the contrary be established, has been shown not to have been accepted and, if not so shown, whether the case ought to be remanded to allow proof on that subject.

The facts are as follows:

On January 1st, 1878, Chas. A. Larendon, declaring himself to be of the city of Atlanta, Ga., voluntary gave, granted and delivered unto Miss Laure Beauregard, in consideration of the love and affection he bore to her and of their contemplated marriage on January 14th following, certain real estate situated in said city and State.

The deed was signed by him and two witnesses and authenticated by a Georgia commissioner in this city. It was accompanied with a photographic view of the property donated to Miss Beauregard, who received both.

Subsequent to the marriage and during the same, Larendon sold the property for some $15,000, as though he had never ceased to own it.

Mrs. Larendon, having afterwards departed this life, and Larendon administering her estate as tutor of the minor children born of their union, rendered an account in which he did not set forth among the property inherited by the minors from their mother, the proceeds of sale. The under tutor opposed the account, asking that they be placed thereon and the district court sustained the opposition.

From the judgment thus rendered, Larendon appeals.

He contends that the deed in question, not having been executed before a notary and two witnesses, as is required by the Louisiana law, and the gift not having been formally accepted, in writing, by the donee, the act is an absolute nullity.

He further contends that, if the act be valid, the donation, far from having been accepted, was expressly refused.

He besides insists that, if the record does not satisfactorily establish that the donation was declined, the case ought to be remanded to enable him to adduce legal evidence to show the refusal.

He says that he abstained from *furnishing* further proof, for the reason that the district judge, during the trial, treated the contract as a Louisiana contract, which dispensed from such proof; but that the judge, after submission of the case, changed his views and dealt with the contract as a Georgia contract.

He therefore concludes that, under such circumstances, equity requires a remanding.

On the other hand, the under tutor of the minors urges that the act is perfectly valid, that it was drawn up in the form in which the law of Georgia requires donations *inter vivos* to be put in; that it was intended to convey real estate in Georgia; that by the law of Georgia, the donation is presumed to have been accepted; that it is not proved that it was not so; that the property passed from Larendon to Miss Beauregard and next from her to her children and that Larendon is responsible for the price of sale received by him and which represents the property.

I.

It is evident that the act in question is not in the form in which the law of Louisiana requires that donations *inter vivos* be framed; but it is apparent that it is drawn according to the requirements of the law of Georgia.

It is probable that, had it been prepared according to our law and authenticated for recognition in Georgia, the present controversy would not have arisen; but is it true that because not so drawn up, but drafted in the shape in which a similar act would have been passed in Georgia, such an act is a nullity?

After reviewing what the most distinguished authors, ancient and modern, have written, as well as the doctrine expounded by the adjudications of courts, on the subject of *foreign contracts*, relative to personal and real property and stating the distinction to be made between the former and the latter, STORY in his commentaries on the conflict of laws, emphatically lays down the rule as being, "that the laws of the place where such (real) property is situate, exclusively govern in respect to the rights of the parties, the modes of transfer and the solemnities which should accompany them. The title therefore to real property can be acquired, passed and lost only according to the *lex rei sitæ*." P. 708, No. 424.

Kent in his commentaries says:

" If a contract be made under one government and it is to be performed under another, and the parties had in view the laws of such other country in reference to the execution of the contract, the general rule is that the contract, in respect to its construction and force, is to be governed by the law of the country or State in which it is to be executed, and the foreign law is, in such cases, adopted and effect given to it." Vol. II, lect. 39, p. 595, No. 459.

Wharton, on private international law, says that "jurists of all

schools and courts of all nations are agreed in holding that land is governed by the law of the place where it is situated." No. 273. And he adds that "if the *lex rei sitæ* be abandoned, there is no other law that can be invoked."

It is uniformily held, says Rorer, on interstate law, that if the instrument be made in one State for the conveyance of *realty* situated in another, then under all circumstances it must in substance and in its execution and also in the evidences thereof, conform to the law of the place where the land to be affected thereby is situated ; for, it is a well settled principle of the law that the jurisdiction over *real* property is local and appertains to the State wherein the property lies and that title thereto passes *only* by conformity with the laws of such State. Many authorities in the notes; pp. 208-9.

It would be cumbersome and useless to refer to the authorities which underlie this conservative and sound doctrine.

Our own code, art. 10, has, in broad and general terms, recognized the principles announced and applied, where it says :

" The form and effect of public and private written instruments are governed by the laws and usages of the places where they are passed or executed.

" But the effect of acts passed in one country to have effect in another country, is regulated by the laws of the country in which such acts are to have effect."

It is unnecessary to refer to the exception which the article contains in favor of *wills*, for, no will is involved in the present case.

It is clear that, when the Legislature adopted the Code reported by the compilers, and which included the article in question, it was not intended as legislation for any territory beyond that of this State ; nay, it may be said that what was designed was simply the announcement of a universally recognized principle, without the remotest idea of placing any restriction upon it, but with the purpose of leaving to courts of justice, as cases would present themselves, to apply or not, that principle, according to the circumstances of each case.

The article contemplates the form, substance and effects of acts, public and private.

As it cannot purport to legislate for other States, it must be considered as peremptory only where the form, substance and effect of such acts relate to property within this State, and therefore that the validity of these must be governed by our own laws and usages.

There is no doubt that this is the case with every sovereignty. Hence it is that the United States Supreme Court has well said, touch-

ing this class of property, that "the power of the State to regulate the tenure of real estate within her limits and the modes of its acquisition and transfer, and the rules of its descent and the extent to which a testamentary disposition of it may be exercised by its owners, is undoubted."

But the law-giver has foreseen the contingency of an act passed in one place and intended to be carried out or executed in another, and has wisely provided therefor.

Read in the proper light, the second paragraph of the article, touching that contingency, simply means:

But the rights and obligations arising under acts passed or drawn up in one country, to be exercised or complied with in another country, are regulated by the laws of the place where such acts are to be executed.

The provision, although at first sight at variance with that contained in the previous paragraph, is not such at all. It relates to a state of things not till then considered, and simply announces the policy which this State would follow when the contingency arises.

In the case of Beirne vs Patton, the old court distinctly held that: "Where a contract is expressly or tacitly to be performed in another place than that where it is made, its validity is to be governed by the law of the place of performance." 17 L. 590.

When the court used the word *validity* it necessarily meant its *legality*, both in form and substance.

In the present case, the act was drawn up according to the law of Georgia, with the avowed design of conveying real estate in that State, by one stating himself to be a citizen thereof.

The contract was not a Louisiana, but a Georgia contract, and its validity must be determined accordingly.

Had this controversy, instead of arising in Louisiana, taken place in Georgia, in what light would a Georgia court have looked upon and treated the contract?

Would it have undertaken to say that the act is a nullity, because not passed in the form in which the law of Louisiana, where it was drawn, requires donations *inter vivos* to be drafted? Undoubtedly not. It would have said: Here is an act for the conveyance of real estate in Georgia. It is drawn up in another State in the shape in which, if passed in Georgia, it would have been put in.

The court cannot require that it be clothed beyond the State in a form which is not that in which it would have been bound to be put in if passed in Georgia. The court would undoubtedly have recognized its validity in point of form.

This is precisely what it has done in a kindred case, in which it held that, where a contract is made in one State, and intended to have effect in another, it must conform to the laws of the latter State. Stricker vs. Tinkham, 35 Georgia, 176. See also Herschfeld vs. Drexel, 12 Ga., 582.

To make the proposition plainer reverse the facts.

Suppose a party domiciled in Louisiana had donated, by an act before a notary and two witnesses in Georgia, real estate in Louisiana, would a Louisiana court refuse to recognize the validity of the act because it was not drawn up there in the form in which, by the law of Georgia, donations *inter vivos* have to be passed? Assuredly not.

The laws of Georgia, on the subject, are as follows:

" To make any agreement, made upon consideration of a marriage, which a valuable consideration, binding on the promisor, the promise must be in writing and signed by him. § 1782, 1950, 2741.

" A deed to lands must be in writing, signed by the maker, attested by at least two witnesses, and delivered to the purchaser." § 2690.

" No prescribed form is essential to the validity of a deed to lands. If sufficient in itself to make known the transaction between the parties, no want of form will invalidate it." § 2692.

" To constitute a valid gift there must be the intention to give by the donor, acceptance by the donee and delivery of the article, or some act, accepted by the law, in lieu thereof. § 2657.

"If the donation be of substantial benefit, the law presumes the acceptance, unless the contrary be shown. § 2658.

" When a law requires a conveyance in writing to the validity of a gift, or the conveyance is made for a good consideration, such conveyance, executed and delivered, will dispense with the necessity of the delivery of the article given. § 2659.

" Actual manual delivery is not essential to the validity of a gift. Any act which indicates the renunciation of dominion, by the donor, and the transfer of dominion to the donee, is a constructive delivery. § 2660.

The conclusion which this court reaches is therefore, that, as the act in question was passed in Louisiana, in the form in which the law of Georgia requires that such acts be drawn, for the conveyance of *real* estate *situate* in that State, its validity must be recognized.

II.

The next question relates to the acceptance of the donation.

Under the very terms of the Georgia law the donation is presumed to be accepted, unless the contrary is shown.

The donor, therefore, retains the right to show that the donation was not accepted; in other words, to rebut the presumption of acceptance created by the law.

It is unnecessary to express any opinion touching the legality and sufficiency of the evidence adduced, for the reason that the appellant claims that, owing to the rulings of the district judge during the trial, which showed that he considered the contract as a Louisiana contract, while after submission of the case he dealt with it as a Georgia contract; he did not offer the evidence which he otherwise would have tendered.

However strongly inclined we might be in general to refuse a remanding for the purpose of admitting evidence which could have been, and was not offered, we consider that, under the exceptional circumstances of this litigation, the ends of justice will be better subserved by sending back the case; but this is done for the sole purpose of enabling the appellant to offer legal evidence to rebut the legal presumption of the acceptance of the donation.

This view of the case dispenses us from considering the prayer of the appellee for an amendment of the judgment, so as to specify the amounts for which the appellant is claimed to be liable.

It is, therefore, ordered and decreed that the judgment appealed from be affirmed so far as it recognizes the validity of the act of donation in question, and that, in other respects, it be reversed; and,

It is now ordered and decreed, that the case be remanded to the lower court for the sole purpose of allowing the appellant to adduce legal evidence to rebut the presumption of acceptance of the donation, created by law, reserving to the heirs the right to offer counter proof; the case otherwise to be further proceeded with according to the views herein expressed and according to law, the costs to abide the final determination of the controversy.