DELLA K. THOMSON AND JOHN M. THOMSON, APPELLANTS, VS. J. C. KYLE, APPELLEE.

1. A mortgage, properly executed by husband and wife, conveying the wife's separate statutory real estate as security for the husband's debt, is valid in this State.

2. So far as real estate or immovable property is concerned, the laws of the State where it is situated furnish the rules which govern its descent, alienation and transfer, the construction, validity and effect of conveyances thereof, and the capacity of the parties to such contracts or conveyances, as well as their rights under the same.

3. Although by the laws of the State of a married woman's domicile she has no capacity to execute a mortgage upon her separ-

ate estate as security for the debt of her husband, yet if she in that State executes a mortgage of that character upon real estate in another State, whose laws permit a married woman to mortgage her real property to secure such a debt, the mortgage will in the latter State be held valid and enforceable by appropriate proceedings.

4. The validity and interpretation of personal obligations executed and to be performed in one State will be governed by the laws of that State when sought to be enforced in the courts of another State.

5. A promissory note executed and payable in one State, though secured by a mortgage on lands situated in another State, will be governed as to the rate of interest it shall bear by the laws of the former State; and if by such laws all interest is forfeited for usury, the same result will follow upon foreclosure of the mortgage in the State where the mortgaged lands are situated.

6. There must be a substantial performance of conditions precedent to authorize recovery as for performance of a contract; and an allegation that the opposite party refuses to permit performance of conditions precedent, is not equivalent to an allegation of performance, especially where the complaining party does not allege his willingness and ability to perform at the time of such refusal, or at any time prior to the expiration of the period fixed for performance.

7. An absolute repudiation of his part of a contract by one of the parties thereto prior to the time fixed by the contract for performance of the agreement of the other party, or while the contract is being performed by such other party within the time limited, will entitle such other party to an action for damages as for a breach of the contract, but such repudiation is not equivalent to performance or a legal excuse for non-performance by the other party of conditions precedent, so as to authorize recovery as for performance of such conditions precedent.

8. Usury in and payments upon a note and mortgage sought to be foreclosed, are matters of defense proper to be pleaded in the answer of a defendant, and for that reason improper to be exhibited in a cross-bill, where the amount of such payments and usurious interest is less than the mortgage debt.

9. Irregularities in chancery practice, if committed at the defend-
    ant's instance and by his consent, are not available to reverse
    a final decree entered against him.

Appeal from the Circuit Court for Alachua county.

### STATEMENT.

A full statement of the numerous lengthy pleadings
and depositions contained in this very voluminous re-
cord would fill many pages of our reports.   For this
reason we shall not attempt a complete history of the
case, but will endeavor to state concisely the main facts
bearing upon those assignments of error only, which
appellants have argued in their briefs here.   The ap-
pellee, complainant below, on November 14, 1891, filed
a bill in equity in the Circuit Court of Alachua county
praying foreclosure of a mortgage on certain real es-
tate situated in that county.   The mortgage debt was
evidenced by a note executed by the appellants, defend-
ants below, to complainant, under date January 18,
1890, for $2,932, due April 10, 1890, and payable in the
city of Birmingham, Alabama.   The mortgage given
to secure this note, was executed on the same day by
the defendants.   The defendant Della K. Thomson
filed her plea on January 4, 1892, whereby she alleged
that prior and subsequent to, and at the time of, the
execution of the note and mortgage she was a married
woman, the wife of her co-defendant, and seized and
possessed of a statutory separate estate in her own in-
dividual right and control, part of which was embraced
in the mortgage; that the note and mortgage were ex-
ecuted in the State of Alabama, and that all transac-
tions, out of which the mortgage debt arose, occurred
in said State; that the mortgage debt was the debt of
her husband exclusively, and she executed the note

and mortgage as security only, and upon no other consideration; that by the laws of Alabama the obligation of a married woman executed for her husband's debt was null and void, and incapable of enforcement, and that the note and mortgage being void as to her in the State of Alabama, was likewise void in the State of Florida.    This plea was upon argument overruled.

On January 20, 1892, the defendant John M. Thomson filed his answer, in which he corroborated the matters of defense set up in the plea of his co-defendant, and in addition he alleged that the note evidencing the mortgage debt contained an item of about $300 which he alleged was interest for less than one year upon a cash advance of about $600 loaned him by complainant in the State of Alabama; that according to the laws of Alabama said sum was usurious, being in excess of 8 per cent. per annum, the legal rate of interest in said State; that under the laws of said State where usurious interest is charged all interest is forfeited; that said mortgage indebtedness also included an item of $100 charged defendant by complainant for a loan of $1,820, in addition to the legal rate of interest under the laws of Alabama upon said loan; and that all these transactions occurred in said State.    Defendant further claimed two credits for payments made upon the mortgage debt; one for $216.66 made by one Rankin Roberts for defendant May 1, 1890; another for $400 made by one S. T. Taylor for defendant May 15, 1890.    Defendant further alleged that by complainant's advice, on or about May 10, 1890, he exchanged certain hotel property in the city of Birmingham, valued at $90,000 with one S. T. Taylor for a certain amount in cash, and 600 shares of $100 each of the capital stock of the Birmingham Safe & Lock Co., an Al-

abama corporation, and made an agreement with com-
plainant to give him $5,000 of the capital stock of the
company for his services as manager of the company's
business, and in addition to transfer to complainant
$40,000 of capital stock as security for advances to the
amount of $18,000 to be made by complainant in order
to carry on the company's manufacturing business,
and that defendant transferred to his wife $10,000 of
the company's capital stock in payment for her dower
interest in the hotel property. The answer charges
the complainant with mismanagement of the com-
pany's property, decrying its business and financial
standing, in order that he might purchase its stock
and plant at a sacrifice; with failing to furnish the
amount of money agreed upon; with requiring the
transfer to him of $10,000 of the capital stock of the
company for his services, instead of $5,000 as origi-
nally agreed, and with many other alleged improper
acts of omission and commission in relation to the Safe
& Lock Company's business, including the taking of
a note from the company for $10,000, in lieu of the
$10,000 of stock transferred to him for services, which
stock it was ascertained had been illegally issued and
was thereupon retired. It was further alleged that
complainant violated his agreement with defendant to
allow defendant to have "current living expenses" out
of the company's business, in consequence whereof
defendant and his wife were compelled to pledge Mrs.
Thomson's shares of stock with complainant at less
than 50 per cent. of their face value to procure money
for this purpose; that complainant issued and sold
bonds of the company, realizing $20,000 therefrom,
which he used in other private matters, and not in the
company's business, and that these bonds were sold

upon a statement of the resources of the company pre-
pared by complainant showing total resources of more
than $100,000. That on November 4, 1890, the com-
plainant rendered defendant a statement of all ad-
vances made to him from May 10, 1890, which, after
allowing certain credits, showed a balance of $15,655.-
80 against defendant, for which Mrs. Thomson exe-
cuted her note due December 15, 1890; whereupon
complainant transferred to her 409 shares of the com-
pany's stock, agreeing that upon payment of the note
he would deliver to her the company's plant and the
entire interest and business thereof; that this state-
ment rendered and note given included the following
items:   $6,666.66 for the $10,000 of the company's cap-
ital stock which had been transferred to complainant
for services, and subsequently ascertained to have been
illegally issued; $4,000 to secure complainant against
any liability he might sustain by reason of having be-
come defendant's surety on an appeal bond, in a case
then pending in the Supreme Court of Alabama.   It
was further alleged that at the time of the execution
of this note complainant assured Mrs. Thomson that
when the note was paid and adjusted the said sum of
$4,000 should be credited thereon, if at that time the
cause in which said appeal was taken had been re-
versed, and the complainant's contingent liability on
the bond relieved; that about September 12, 1891, at
complainant's request defendant entered into negotia-
tions with him for a final settlement of all business
matters between them; whereupon it was proposed
that complainant surrender Mrs. Thomson's note for
$15,655.80, and in consideration thereof that the de-
fendants transfer absolutely to complainant all the
capital stock of the Safe & Lock Company, then owned

by them, amounting to $50,000; that pending consid-
eration of this proposition the defendant insisted that
complainant surrender the note and mortgage, here
sought to be foreclosed, as a set off to the $4,000 item
embraced in Mrs. Thomson's note, the case before men-
tioned having in the meantime been disposed of by the
Supreme Court of Alabama, and the complainant there-
by relieved from his contingent liability upon the ap-
peal bond, but complainant in violation of his agree-
ment made at the time of the execution of Mrs. Thom-
son's note, declined to accede to this proposition; and
thereupon the following agreement was made between
the complainant and defendants, *viz:* The complain-
ant was to, and did, surrender Mrs. Thomson's note for
$15,655.80, and defendants were to, and did, transfer
to complainant absolutely all the capital stock owned
by them in the Safe & Lock Company, which it was
agreed the complainant was to hold a reasonable time
subject to an option in favor of said defendant, with
privilege to defendant of making sale of same at not
less than $25,000, which amount complainant was to
accept in full of all demands against defendant; re-
lease all claims to the capital stock and plant of the
company and allow defendant as commissions for ef-
fecting such sale the note and mortgage here sought to
be foreclosed, and in addition any excess over $25,-
000 realized from such sale; that in the afternoon of
the same day on which this arrangement was consum-
mated, the complainant declared his intention of re-
taining the safe and lock plant, and the capital stock
thereof, and his refusal to permit defendant to make
sale of the same, and thereupon demanded payment
of the note and mortgage sought to be foreclosed, and
upon defendant's declining to pay same, instituted the

present suit; that on the night of November 16, 1891, the safe and lock plant was destroyed by fire, covered by insurance to the amount of $25,000; that the land upon which it was situated was of the value of $3,000, and that complainant had on hand, the product of the plant, safes to the value of $12,000 to $15,000 which were not destroyed by the fire, making a total of tangible and available assets in complainant's hands amounting to $40,000 or more, to satisfy an alleged claim of $15,655.80, besides several thousand dollars of bills receivable for safes sold. Defendant insisted that he owed complainant nothing; but that complainant owed him a large sum on account of the several transactions mentioned, a statement of which he exhibited in his answer as follows:

| | | |
|---|---:|---:|
| Complainant's note and mortgage........ ............. | | $2,932 00 |
| Amount paid by Rankin Roberts | $216 66 | |
| Amount paid by S. T. Taylor.. | 400 00 | |
| Charge of usurious interest... | 300 00 | |
| Contingent liability on appeal bond...................... | 4,000 00 | |
| Illegal stock issued........... | 6,666 66 | |
| Charge for advancing $1,820... | 100 00 | |
| Difference in defendant's favor | | 8,750 66 |

$11,682 66—$11,682 66

On January 27, 1892, defendant John M. Thomson filed a cross-bill against complainant, in which, after reciting the proceedings in the foreclosure suit, he alleged substantially the same matters as were set forth in his answer to the foreclosure bill, and prayed that a master be appointed to state an account between complainant and defendant, and in stating such

account, that the master allow no interest on the mortgage debt; that he allow as credits on same the sum of $616.66 paid by Roberts and Taylor, $300 for usurious interest, $100 for the charge made by complainant for advancing the $1,820, and that the amount thus found to be due upon the mortgage be set off with the sum of $4,000, included in Mrs. Thomson's note to secure complainant against loss as a surety on defendant's appeal bond, and the further sum of $6,666.66, estimated value of the capital stock of the Birmingham Safe and Lock Company illegally issued; that a balance be then struck and the defendant awarded a money decree against complainant for the amount due him as shown thereby, and that the mortgage sought to be foreclosed be cancelled of record.

On February 2, 1892, complainant demurred to this cross-bill, assigning, among other grounds, a general want of equity; that the mortgage sought to be foreclosed was valid under the laws of Florida, and its validity ought to be tested by the laws of Florida, rather than those of Alabama, and that the usury laws of Alabama could have no operation in Florida. This demurrer was sustained and the cross-bill dismissed July 2, 1892.

The complainant filed exceptions to the answer of John M. Thomson, and on July 2, 1892, the court sustained these exceptions to each matter of defense contained in the answer, except the allegations relating to payments made upon the mortgage debt by Roberts and Taylor.

On September 17, 1892, after the cause was at issue, the court below, by consent of parties, appointed J. A. Ammons, Esq., special master "to take testimony

and make an accounting," with instructions to report same to the court. On September 6, 1893, the special master filed his report, accompanying it with the testimony taken by him, showing an amount due upon the mortgage debt for principal, interest and attorney's fees, of $4,096.60. The defendants excepted to so much of the report as contained an accounting of the amount due on the mortgage debt, upon the ground that a finding of that character was premature, in the absence of an interlocutory degree, settling the equities of the case. These exceptions were overruled September 13, 1893, and on September 22, the court entered a decree confirming the special master's report, adjudging the amount due upon the mortgage debt to be $4,096.60, allowing defendants ten days within which to pay same, and, in default of such payment, debarring and foreclosing them of all right and equity of redemption in the mortgaged premises, and directing the sale of said property at public auction by a master thereby appointed, who was directed to execute a deed to the purchaser at such sale, and put him in possession of the mortgaged property; and to report to the court the amount of any deficiency after applying the proceeds of such sale to the credit of the mortgage debt. From this decree the defendants in open court entered this appeal, but no supersedeas was ever granted. Subsequently defendants filed a petition for a rehearing, which was overruled; and on January 22, 1894, the master appointed by the decree of foreclosure filed his report, therein stating that in pursuance of said decree he had, after due advertisement, sold the mortgaged property at public auction on January 1, 1894, to Sarah A. Nichols, the highest

bidder therefor, at the sum of $2,000; that after de-
ducting the proceeds of this sale from the amount de-
creed to be due upon the mortgage debt there was a
deficiency due complainant upon such debt in the
sum of $2,306.83.

On January 25, 1894, the court below entered a
money decree against the defendant John M. Thom-
son, in favor of complainant, for the amount of this
deficiency, with direction for the issuance of an exe-
cution therefor.

The assignments of error argued in this court ques-
tion the correctness of the rulings of the court below
in sustaining the demurrer to and dismissing the
cross-bill; in overruling the plea of defendant Della K.
Thomson; in sustaining exceptions to the answer of
defendant John M. Thomson; in overruling defend-
ants' exceptions to the report of the special master,
and in rendering decree of foreclosure for the full
amount reported to be due upon the mortgage debt by
the special master without allowing credit for the pay-
ments, amounting to $616.66, alleged to have been
made by Roberts and Taylor.

The other facts in the case are stated in the opinion.

*Thomas E. Bugg*, for Appellants.

*W. W. Hampton*, for Appellee.

CARTER, J.:

I. The question presented by the plea of Della K.
Thomson is an interesting one, and one upon which
the authorities are not in entire accord. It is not de-
nied by appellants that had the mortgage sought to

be foreclosed in this case been executed in this State, it would have been valid and enforceable under our laws. Indeed, it has been held by this court, on more than one occasion, that a mortgage properly executed by a married woman and her husband, conveying the wife's separate statutory real estate as security for her husband's debt, is valid. Dzyialynski vs. Bank of Jacksonville, 23 Fla., 346, 2 South. Rep. 696; Ballard vs. Lippman, 32 Fla., 481, 14 South. Rep. 154. It is insisted, however, that under the laws of Alabama a married woman is without capacity to bind herself or her property as security for the debt of her husband, and as the mortgage sought to be enforced in this case was executed, and the debt secured thereby, was pay-able in that State, and all the parties were there dom-iciled, that those laws necessarily entered into and became a part of the contract rendering it void in that State; and that, being void in Alabama, it is by virtue of interstate law, void in Florida. It may be admitted that this argument has strong application to the note executed by Mrs. Thomson with her husband, which the mortgage was given to secure, for the note being a general personal obligation, if void by the laws of the State in which it was executed and made payable, it ought likewise to be void in every other State where it is sought to be enforced. But it does not follow that because Mrs. Thomson is not bound by the note it is for that reason totally void. It still re-mains a valid obligation of her husband which she can in this State secure by a mortgage of her separate statutory property. Dzyialynski vs. Bank of Jack-sonville, 23 Fla., 346, 2 South. Rep. 696. We do not understand that any principle of interstate law re-quires us to test the validity or sufficiency of convey-

ances of, or liens upon, real estate in this State by the laws of other States or Nations, even though such contracts may have been executed, or given to secure the performance of some act, within their jurisdiction. The reasons why we should not are obvious. The subject-matter, with reference to the title of which the the conveyance or lien is executed, being at the time of such execution an immovable thing, not only located beyond the control of that' sovereignty within whose jurisdiction the contract is executed, and forever so to remain, but then within the exclusive jurisdiction of another independent sovereignty, and forever so to remain, the parties to such conveyance are presumed to have contracted, at least so far as the immovable thing is concerned, with reference to the laws of that jurisdiction within whose borders the thing is situated. And no sovereign State, without express legislative sanction, is presumed to surrender to owners of immovable property within its limits the power to encumber or change the title thereto in any other manner than that pointed out by its laws. It is, therefore, almost universally held that so far as real estate or immovable property is concerned, we must look to the laws of the State where it is situated for the rules which govern its descent, alienation and transfer, and for the construction, validity and effect of conveyances thereof (United States vs. Crosby, 7 Cranch, 115; McGoon vs. Scales, 9 Wall. 23; Brine vs. Insurance Co., 96 U. S., 627; Gault vs. VanZile, 37 Mich., 22; Bissell vs. Terry, 69 Ill., 184; West vs. Fitz, 109 Ill., 425; Fessenden vs. Taft, 65 N. H. 39, 17 Atl. Rep. 713; Curtis vs. Hutton, 14 Ves. 537; Frierson vs. Williams, 57 Miss., 451; Crolly vs. Clark, 20 Fla., 849; Frazier vs. Bogg, 37 Fla., 307, 20 South. Rep. 245); and it is

to the same law that we must look for the rules governing the capacity of the parties to such contracts or
conveyances, and their rights under the same.     Doyle
vs. McGuire, 38 Iowa, 410; Baum vs. Birchall, 150 Pa.
St. 164, 24 Atl. Rep., 620; Chapman vs. Robertson, 6
Paige Chy. 627, S. C. 31 Am. Dec. 264; Succession of
Larendon, 39 La. Ann. 952, 3 South. Rep. 219; Succession of Cassidy, 40 La. Ann. 827, 5 South. Rep.
292; 2 Parsons on Contracts, *572; Story on Conflict of
Laws, sec. 431; Rorer on Interstate Law, p. 263.     It
would seem, therefore, that upon principle the *mortgage* in this case should be subjected to the laws of
this State, in order to ascertain its validity, construction and the capacity of the parties to execute it,
rather than to the laws of the State of Alabama, within whose borders the real estate is not situated, and
as to which her laws can have no extra-territorial
effect.     While a contrary opinion was entertained in
Ohio (Evans vs. Beaver, 50 Ohio St. 190, 33 N. E.
Rep. 643) it has been held in several well-considered
cases that although by the laws of the State of a married woman's domicile she has no capacity to execute
a mortgage upon her separate estate as security for
the debt of her husband, yet if she in that State executes a mortgage of that character upon real estate
situated in another State whose laws permit a married woman to mortgage her property to secure such
a debt, the mortgage will in the latter State be held
valid, and enforceable in its courts by appropriate
proceedings : Post vs. First National Bank, 38, Ill.,
App. 259; affirmed in 138 Ill., 559, 28 N. E. Rep. 978;
Cochran vs. Benton, 126 Ind. 58, 25 N. E. Rep. 870;
Johnston vs. Gawtry, 11 Mo. App. 322.     See, also,
Frierson vs. Williams, 57 Miss., 451; Goddard vs.

Sawyer, 91 Mass., 78; Swank vs. Hufnagle, 111 Ind., 453, 12 N. E. Rep. 303, where the same principles were applied to a different state of facts. We hold that, notwithstanding Mrs. Thomson's incapacity by the laws of Alabama to execute the mortgage sought to be foreclosed here, she was capable under our laws of executing in Alabama, a mortgage upon her separate statutory real property in this State to secure her husband's debt, and that her plea was properly overruled. This conclusion also disposes of those portions of the cross bill and answer of the defendant John M. Thomson which cover the same matters as this plea.

II. The answer and cross-bill of the defendant John M. Thomson alleged that there was included in the obligation evidencing the mortgage debt the sum of $300 which, under the laws of the State of Alabama, was usurious interest, and that under the laws of that State usury forfeited all interest upon the principal debt as to which unlawful interest was charged. As this obligation was a personal one, and it was executed and to be performed in the State of Alabama, having no reference to immovable property in this State, we think its validity and interpretation are governed by the laws of the former State. Perry vs. Lewis, 6 Fla., 555. Therefore, although in this State there were no laws against usury at the time of the execution of this obligation, yet if it is tainted with usury by the laws of Alabama, where it was executed, and made payable, and where all the parties resided at the time of its execution, we think the infirmity follows it to this State, even when secured by a mortgage on lands in this State. The authorities are not entirely unanimous on this point, but we think the weight of

them, supported by principle, sustains the proposition that a note executed and payable in one State, though secured by a mortgage on lands in another, will be governed as to the rate of interest it shall bear by the laws of the former; and if by such laws all interest is forfeited for usury, the same result will follow, upon foreclosure of the mortgage securing it, in the State where the mortgage lands are situated. 1 Jones on Mortgages, sec. 657; 2 Parsons on Contracts, *585; Story on Conflict of Laws, sec. 305; Rorer on Interstate Law, p. 110 *et seq.*; Arnold vs. Potter, 22 Iowa, 194; Maynard vs. Hall, 92 Wis., 565, 66 N. W. Rep. 715; DeWolf vs. Johnson, 10 Wheat. 367; Call vs. Palmer, 116 U. S. 98, 6 Sup. Ct. Rep. 301.

III. We think the rulings of the Circuit Court upon those portions of the answer and cross-bill of the defendant John M. Thomson, relating to transactions and settlements arising out of and in connection with the business of the Birmingham Safe and Lock Co., were correct. The appellants say in their brief that these matters were not introduced into the cross-bill and answer for the purpose of obtaining any settlement thereof, but only to show that in connection with a transfer of stock in said company the note and mortgage now sought to be foreclosed were treated of in such a way as to show that complainant is now debarred of the relief sought by foreclosure of the mortgage. As appellants have confined their argument to this statement of their claim, we shall consider that question only, without expressing an opinion as to whether the items claimed in the cross-bill as set-offs to the mortgage debt can, either by answer or cross-bill, be available as such in an equitable proceeding to foreclose the mortgage.

It was distinctly averred in the cross-bill, as well as the answer, that the agreement entered into between the complainant and the defendants on September 12, 1891, was the result of negotiations for a final settlement of all matters between the parties, but that the complainant declined to permit the note and mortgage now sought to be enforced to be included in such settlement. By the terms of the agreement of September 12, 1891, the complainant became the owner of all the stock and plant of the Safe & Lock Company; and the defendant John M. Thomson retained an option authorizing him to sell the Safe & Lock Company's business at not less than $25,000, which amount complainant was to accept in full of all demands against defendant, release all claims to the capital stock and plant of the company, and allow defendant as commissions for making such sale any amount realized therefrom in excess of $25,000, and in addition the note and mortgage involved in this suit. It is very clear that this agreement did not regard the note and mortgage as settled; on the contrary, it was thereby recognized as a valid existing obligation. It is nowhere averred that the defendant secured, or tried to secure, a purchaser for the Safe & Lock Company's property, or that he could have secured one within the reasonable time contemplated by his option. The sale of this property by defendant at not less than $25,000 was a condition precedent on his part to his right to recover commissions or to a surrender of the note and mortgage; and in regard to conditions precedent it is an elementary rule of law that there must be at least a substantial performance thereof in order to authorize a recovery as for performance of the contract. An allegation that the opposite party refuses to

permit performance of conditions precedent is not equivalent to an allegation of performance (Myrick vs. Merritt, 22 Fla., 335); and especially is this true where the complaining party, as in this case, does not allege his willingness and ability to perform at the time of such refusal, or at any time prior to the expiration of the period fixed for performance. It is true that an absolute repudiation of his part of a contract by one of the parties thereto prior to the time fixed by the contract for performance of the agreement of the other party, or while the contract is being performed by such other within the time limited, will entitle such other party to an action for damages as for a breach of the contract (Myrick vs. Merritt, 22 Fla., 335; Sullivan vs. McMillan, 26 Fla., 543, 8 South. Rep. 450); but in this case the defendant does not allege or claim any damage to him arising from the complainant's alleged repudiation of the contract, and in no case can a repudiation of a contract by one party be held equivalent to performance, or a legal excuse for non-performance by the other party of conditions precedent, so as to authorize recovery as for performance of such conditions precedent.

IV. The questions of usury in, and payments made upon, the note and mortgage sought be foreclosed were matters of defense proper to be pleaded in defendant's answer (1 Beach's Mod. Eq. Pr., sec. 349; Wiltsie on Mortgage Foreclosure, secs. 344, 411), and for that reason improper to be exhibited by cross-bill, as the amounts so claimed were alleged to be less than the mortgage debt. Sanderson vs. Sanderson, 17 Fla. 820; Sammis vs. L'Engle, 19 Fla. 800.

V. The exceptions of defendants to the special master's report were properly overruled. The reference

decree authorized the master "to take testimony and make an accounting," and this decree was entered by express consent of the defendants. If, in practice, it be irregular to refer a chancery cause for an accounting prior to an interlocutory decree settling the equities, as contended by defendants, this irregularity in the present case was committed by defendants' consent, and they are, therefore, in no situation to insist upon it for a reversal of the final decree.

VI. We think the court below should have allowed as credits upon the mortgage debt the payments claimed by defendants to have been made thereon by Roberts and Taylor. The defendant John M. Thomson testified positively that the complainant had admitted to him that he had collected the amount claimed from Roberts, and that Taylor paid complainant the money claimed to have been paid by him in defendant's presence in May, 1890. The complainant does not deny collecting the amounts claimed from Roberts and Taylor, nor does he deny telling defendant that he had collected the amount claimed from Roberts. He does not state when these collections were made, but says that all amounts collected by him from Taylor and Roberts were accounted for by him to defendant at a settlement between them dated January 18, 1890. That in this settlement all unsecured claims against defendant were included, and the collections from Roberts and Taylor were accounted for, and the note and mortgage sought to be foreclosed were given for the balance due upon such settlement. It is quite evident that complainant is mistaken as to these collections being included in that settlement, because his receipt to defendant for the notes of Rankin Roberts, upon which the collection from Roberts claimed as a

payment was made, is dated January 28, 1890, ten days after the complainant claims to have accounted for the collection from Roberts. This receipt expressly states that the proceeds of the Roberts notes when collected are to be placed to the credit of John M. Thomson's indebtedness to complainant.

VII. The appellee states in his brief that he is willing to remit the amounts found by this court proper to be deducted on account of usury, according to the allegations of the answer of the defendant John M. Thomson, in case this court is of opinion that the Circuit Court ought to have allowed the defense of usury in this case. We are of opinion that the court should, under the allegations of the answer, have deducted from the mortgage debt the sum of $300 claimed to have been usurious, together with all interest upon that sum and upon the $600 principal debt upon which the said sum of $300 usurious interest was charged. It was not alleged in the answer or cross-bill that the $100 charged for advancing the $1,820, was illegal interest or usurious according to the laws of the State of Alabama. We think, therefore, that the exceptions to this item in the answer were properly sustained. 1 Beach's Mod. Eq. Pr. sec. 349 and notes. The final decree includes interest at 8 per cent. upon the mortgage debt to the date of the decree. The usurious item of $300 with all interest upon same, and all interest upon the $600 above mentioned, should have been excluded from, and the payments made, *viz:* $216.66, May 1, 1890, and $400, May 10, 1890, should have been duly credited to, the mortgage debt in computing the amount due thereon for the final decree of foreclosure. The usurious item and the interest to be deducted on account thereof at the date of the final

decree of foreclosure amounted to $564.80, the payments with interest to the date of the decree, amounted to $781.74, a total of $1,346.54. We think this sum is proper to be deducted from the amount of the decree of foreclosure, and will modify same to that extent.

It will, therefore, be ordered that the decree of foreclosure, dated September 22, 1893, be modified so that the amount therein decreed to be due for principal, interest and attorney's fees upon the mortgage debt at the date of the decree will be $2,750.06, instead of $4,096.60, and as modified that decree will be affirmed. Garvin vs. Watkins, 29 Fla. 151, 10 South. Rep. 818; Price vs. Boden, 39 Fla. 218, 22 South. Rep. 657. The money decree for deficiency, entered January 25, 1894, is reversed, with directions to the Circuit Court to enter judgment for the proper amount of such deficiency, taking as a basis for estimating same the decree of foreclosure as modified by this court. The appellee will be taxed with the costs of this appeal.