11 So.2d 374

## WARD v. STALLWORTH.

### 2 Div. 181.

Supreme Court of Alabama.

Nov. 27, 1942.

Rehearing Denied Jan. 28, 1943.

Bart B. Chamberlain, Jr., and Smith, Hand & Arendall, all of Mobile, for appellant.

Godbold & Godbold, of Camden, for appellee.

FOSTER, Justice.

The main question argued in this case relates to the legal effect of the conveyance by a person residing in Florida of her real property situated in Alabama, when she had been declared by the Florida court to be insane, and an ancillary guardian appointed in Alabama; but at the time of the conveyance, the Florida court having jurisdiction had decreed that she was restored to sanity, but the Alabama guardianship had not been discharged, assuming that she was in fact incompetent to transact that sort of business some three months after the Florida decree.

The contention seemed to prevail below that the full faith and credit clause of the Federal Constitution (section 1, Article 4) requires all the courts of Alabama to accept, without question, the fact of the competency of the grantor and her status of sanity at the time of the conveyance executed after the rendition of the Florida decree, and that plaintiff's right to recover was established by that holding, notwithstanding the land was in possession of defendant as an ancillary guardian under appointment in this State still undischarged.

Our statute on the subject of an ancillary guardianship is section 21, Title 21, Code of 1940, as follows: "Nonresident persons of unsound mind.—The court of probate of a county in which a person of unsound mind residing without the state may have property, real or personal, requiring the care of a guardian, may appoint a guardian for the property of such person which may be within this state, if such person has been declared of unsound mind by a court having jurisdiction in the state of his residence."

This does not involve an inquiry into the mental soundness of the ward in such proceeding. .

There is no express provision of Alabama law for revoking letters of ancillary guardianship or discharging the guardian for any reason except as section 20, Title 21, Code of 1940, may be so construed. Whereas if a resident of this State has been in this State duly adjudged of unsound mind, express provision is made for revocation, when the same court shall adjudge that the ward had become of sound mind. Sections 16, 17, 18, 19 and 20, Title 21, Code of 1940.

■ The guardianship of an incompetent may be ∙ terminated when it is no longer necessary by reason of the ward's restoration to competency. 25 Amer.Jur. 37, section 53(7).

■■ The adjudication of a competent court in his domicile, within its jurisdiction and powers properly invoked, that one was restored to sanity would not ipso facto, and without an order of the probate court in Alabama, appointing the ancillary guardian, serve to revoke his letters of guardianship or discharge the power of such Alabama guardian or restore the Alabama property to the custody of the ward, but would be a proper ground for an order of revocation and then for requiring the guardian to make settlement under section 134, Title 21, Code of 1940. But the guardianship in Alabama is effective until it is discharged by a competent court in Alabama. 33 Corpus Juris 676, § 336, p. 677, notes 33, 34 and 35; 28 Amer.Jur. 671, section 23, notes (3) and (4); 102 A.L.R. 450.

In Gasquet v. Fenner, 1918, 247 U.S. 16, 38 S.Ct. 416, 417, 62 L.Ed. 956, it was held that a decree of a court of Tennessee adjudicating one to be sane who had been declared incompetent by a prior decree of a Louisiana court, his former residence, could at most furnish grounds for a conclusive right to have the interdiction decree (on account of insanity) removed in Louisiana. The alleged sane person, after having procured the decree adjudicating him sane in Tennessee (where he became domiciled), notwithstanding the decree of interdiction in Louisiana, brought suit in Louisiana as a sane person to recover from the executor of his mother's will property to which he would be ultimately entitled as a beneficiary, and contended that by the dismissal of his bill recognition and full faith were denied to the decree of the Tennessee court. The court said:

*"Whatever may be the conclusiveness of the Tennessee decree it cannot operate upon the interdiction directly. At most it can only furnish ground for a conclusive right to have the interdiction removed."* (Italics supplied.) See, also, Interdiction of Gasquet, 147 La. 722, 85 So. 884.

To like effect is the case of Jones v. Golden, 66 N.D. 185, 263 N.W. 160, 102 A.L.R. 441.

■ It is the duty of a guardian until his letters are revoked to manage the estate of the ward. Section 42, Title 21, Code of 1940. And this duty applies to the estate of a non compos mentis. Ramsey v. McMillan, 214 Ala. 185, 106 So. 848. This is also true as to the lands of the ward, including the right to lease them (sections 45 and 53), to repair them (section 55), to keep the farming operations together and going when prescribed by order of court (sections 56 and 57), to sell the land under court orders for the purposes specified in the statute (sections 73, 76 and 81).

■ We do not doubt that a ward either a minor or a non compos mentis, having become sui juris can make a binding contract as to his property rights then in the custody of the guardian, subject to the power of the court over the same necessary to a final settlement of the guardianship. But even so, neither the ward nor a purchaser of the land from him when it is in possession of the guardian legally charged with the duty of its management can recover at law such possession from the guardian while the duty and authority as such continue in him. Lee v. Lee, 55 Ala. 590, 595; Chapman v. Chapman, 32 Ala. 106; 25 Amer.Jur. 97, 98, sections 157, 158. That is the status of this suit, and is conclusive against the right of plaintiff to recover the land in this suit as now set up, but not of the ultimate rights of the parties. It is immaterial that defendant is not sued as guardian. If he is entitled to retain possession of the land on any account, plaintiff cannot recover it of him, since plaintiff must show a right to the immediate possession. Cofer v. Schening, 98 Ala. 338, 13 So. 123; Olive v. Adams, 50 Ala. 373.

■ The argument of counsel and incidents of the trial convince us that the judgment below was rendered on the theory that the Florida judgment was conclusive of the sanity of the grantor at the time of executing the deed, and that her purchaser acquired a title by the deed which he conveyed to the plaintiff and which justified a recovery against one who was the guardian in possession during the continuance of his status as such. We think that he cannot recover in this action, and that his right to the land is not concluded by the Florida decree, nor by the result of this suit, but upon a proper application of section 41, Title 9, Code of 1940, for reasons now to be stated.

In our case of Pope v. Bolin, 224 Ala. 322, 140 So. 382, we gave approval to the obvious legal effect of a finding of insanity and then of sanity in the same court, holding that it was res adjudicata of that status *at the time of the adjudication as between the parties to such proceeding;* that a revocation of a guardianship causes the previous adjudication to cease to be evidence of a *continuing status of mental incapacity* to manage her own estate. (Citing 32 Corpus Juris 646, § 225).

■ While the ward is a party to the proceeding, and it is binding on her for some purposes as long as the decree is operative, it does not mean that she, or some one on her behalf, is thereby estopped to show that when she thereafter made a deed of her land she was in fact a non compos mentis. *For the purposes of the guardianship,* she is estopped by the decree, but as to subsequent transactions having no connection with it, she is not thus estopped.

In the case of In re Baker's Estate, 176 Cal. 430, 168 P. 881, 883, the question in a

California court was the sanity of a testator who made a will in 1912. In 1877 he had been adjudged insane in New York where he had property and a guardian was appointed. In 1902 the court there adjudged that he had become competent and the guardianship discharged. The California court held that the adjudication was not conclusive that he was thereafter sane. That "prior to that judgment the legal presumption would be that the insanity previously adjudged to exist would continue. Thereafter the legal presumption would be that he was sane. Each of these presumptions was disputable."

The conclusive effect of the decree in Florida was due to be given full faith and credit in other states; but in respect to a conveyance of land in Alabama executed afterwards, it was not res adjudicata at the time of its execution as to her sanity. Aetna Life Ins. Co. v. Cornelius, 226 Ala. 452, 147 So. 632; 32 Corpus Juris 647, § 228.

█ Conveyances of land in Alabama are governed by Alabama law, both as to the manner of their execution and the competency of the parties. Sunderland v. United States, 266 U.S. 226, 45 S.Ct. 64, 69 L.Ed. 259; Thompson v. Kyle, 39 Fla. 582, 23 So. 12, 63 Am.St.Rep. 193.

█ Section 41, Title 9, Code of 1940, the same as section 6822, Code of 1923, is the only exception in Alabama from the common law and statutory rule whereby a deed from a non compos mentis is absolutely void. Section 43, Title 9, Code of 1940; Metropolitan Life Ins. Co. v. Bramlett, 224 Ala. 473, 140 So. 752; Ivey v. May, 231 Ala. 339, 164 So. 732.

█ To get title by deed from a non compos mentis, the purchaser must buy in good faith, for a valuable consideration, without notice of the insanity.

Powell, the purchaser may have had notice of the insanity of his grantor existing prior to the decree of the Florida court in June, 1939, adjudging her restoration to sanity. But he was informed of that decree before he made the purchase. Thereafter he had conversations with her about it, and was present when she made the deed. His information in respect to the decree of restoration would be sufficient to justify him in assuming that she was thereafter sane if he had no notice to the contrary, as it is prima facie evidence of the continuing status of sanity. But in view of his conversations with her thereafter,

before his deed was executed, and the interest manifested in his letters and their nature, it becomes a question of fact to be inferred from all the circumstances whether he really had notice of her then mental impairment, but simply relied implicitly on the effect of the Florida decree, and closed his mind to what was obviously her condition after the date of that decree.

█ If the Court should find that he acted in good faith and had no notice of her mental status except as furnished by the rendition of the Florida decree, and he paid her a valuable consideration, then as against her, he is entitled to the possession of the land, for his deed is not void, and her remedy, if she was then incompetent by reason of insanity, is to recover from him the difference between the market value of the land and the price he paid her for it.

█ If he had notice of her mental condition and that she was non compos mentis at the time she executed the deed, notwithstanding the Florida decree, and before his purchase was closed, his deed is void, and neither he nor his purchaser is entitled to the land as against her, although the subpurchaser may have been himself without notice. Livingston v. Livingston, 210 Ala. 420, 98 So. 281; Jackson v. American Bank & Trust Co., 233 Ala. 486, 172 So. 600; Hood v. Holligan, 229 Ala. 539, 158 So. 759.

█ Section 134, Title 21, Code of 1940, section 8207, Code of 1923, requires a guardian to make final settlement of his guardianship on a restoration of the ward to sanity. If the ward is a nonresident and a guardian was appointed in this State on an adjudication of insanity in the state of the ward's residence, without an inquisition in Alabama, and a competent court in the state of his residence has decreed that the ward has been restored to sanity, that fact is conclusively settled insofar as the guardianship in Alabama is concerned, and on its strength the Alabama court must make an order requiring him to make settlement. The decree of the court of her domicile cannot be attacked in this State except on jurisdictional grounds. It therefore became the duty of the guardian in Alabama to make final settlement of his guardianship, but the Florida decree did not ipso facto remove or discharge him. On June 7, 1940, the probate judge ordered him to make settlement. On July 22, 1940,

658

the guardian, defendant in this suit, filed a bill in the circuit court, in equity, which sought the removal of the guardianship into that court. Section 26, Title 21, Code of 1940. See Ex parte McLendon, 212 Ala. 403 (7), 102 So. 696. But we do not find in the record an order of the court made on that bill. This action of ejectment was begun January 18, 1941.

 Since it is the duty of the guardian to collect and take into his possession the assets of the ward (Ramsey v. McMillan, 214 Ala. 185, 106 So. 848; Kelly v. Wilson, 234 Ala. 455, 175 So. 551), and manage and control them (section 42, Title 21, Code of 1940), neither the ward on restoration to sanity, nor her grantee, as we have said, can recover at law possession of such property from the guardian until he shall make his settlement as required by law. Lee v. Lee, supra.

But this plaintiff claiming under a deed from the ward may intervene under section 247, Title 7, Code of 1940, whether the settlement is made in the probate court or after removal into a court of equity, so as to have a decree for such amount due the ward on settlement as he (this plaintiff) may be entitled to, if anything. Spear v. Banks, 125 Ala. 227, 27 So. 979.

If the guardianship has been removed into equity, that court would have full power to administer the insanity statute, supra, (section 41, Title 9, Code of 1940) in event of an intervention by this plaintiff, so as to afford full relief, since a removal of such guardianship draws with it not only the power in equity to determine the person to whom the guardian should account and to whom he should deliver the assets in his possession but it may also adjust all equities between the parties in connection with that situation.

This suit was tried by the judge and court without a jury. Since we think that plaintiff cannot recover possession of the land at law from defendant until there has been a termination of the guardianship, and since it appears that such event had not occurred when this suit was begun and tried, we see no reason to remand it. We think judgment should be and is hereby rendered for appellant.

Reversed and rendered.

GARDNER, C. J., and BOULDIN and LAWSON, JJ., concur.