## Lusson Petition

*J. Montgomery Forster*, for petitioner.

LEFEVER, J., October 20, 1959.—This matter is before the court upon a "Petition for Adjudication of Competency" filed by Dorothea Lusson, who was adjudged an incompetent by decree of the County Judge's Court for Lake County, Fla., dated April 18, 1953.

A hearing was held upon this petition on August 19, 1959. The pertinent evidence then adduced is as follows:

Dorothea Lusson was a domiciliary of Florida for many years. She was twice committed to the Florida

State Hospital at Chattahoochee, Fla., for the periods September 14, 1938, to August 18, 1939, and April 6, 1953, to July 16, 1954. The diagonsis was psychoneurosis neurophrenia. On April 18, 1953, the County Judge's Court for Lake County, Fla., adjudicated petitioner incompetent and appointed Burham Reilly, Esq., of Eustis, Fla., the guardian of her property. On July 16, 1954, she was discharged from the Florida State Hospital in the custody of her daughter, Dorothea Lusson Mella, who brought petitioner to reside with her in her then residence, 214 Jessup Street, Philadelphia. On June 30, 1955, the daughter and her husband moved to North Quincy, Mass., whereupon petitioner leased and moved into an apartment at 4527 Osage Avenue, Philadelphia, where she still resides alone.

Petitioner is employed as a part time baby-sitter. Her earnings from this occupation, together with a support order against her husband, Louis C. O. Lusson, entered on June 11, 1940, by the Circuit Court of the Fifth Judicial Circuit of Lake County, Fla., and a monthly allotment through a son in the United States Air Force, constitute her sole assets and means of livelihood.

Dr. Drayer, a well known and able psychiatrist, testified that he had recently made a thorough psychiatric examination of petitioner, as a result of which he is of the opinion that she is not now likely to become the victim of designing persons, that she is fully competent mentally, that her prognosis is good and that he would "recommend strongly that the guardianship established in Florida be terminated by whatever legal means may be appropriate and full control of her affairs be returned to her."

At the beginning of the hearing the hearing judge raised the question of this court's jurisdiction in this case. However, as petitioner and her witnesses were present in court, the hearing judge deferred deter-

mination of the jurisdictional question and permitted the evidence to be presented. Following the hearing, petitioner's counsel filed a brief which the hearing judge has carefully read, together with the cases therein cited.

The jurisdiction of this court in the instant case turns upon the question of "Full Faith and Credit". Article IV, sec. 1, of the United States Constitution provides: "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State . . .".

"The general rule is that a judgment of a court of competent jurisdiction is final and conclusive, and must be given full faith and credit in all jurisdictions as to all matters in controversy, or which with proper diligence might have been interposed as a defense in the original action in the jurisdiction of another state": Yost v. Yost, 172 Md. 128, 132, 190 Atl. 753 (1937).

In Gasquet v. Fenner, 247 U. S. 16 (1918), Gasquet was adjudicated "incapable of taking care of his person and administering his estate" by judgment of interdiction of the Louisana courts. Thereafter, he filed a petition in the Probate Court of Shelby County, Tenn., for an inquiry to determine whether he was a lunatic. That court thereupon adjudicated him of sound mind and "entitled to settlement from all persons, 'any disability . . . by reason of the proceedings against him . . . [i.e. the Louisana interdict] being hereby removed' ". Armed with this decree, Gasquet brought a bill in the Louisana court to determine his property rights in his mother's estate. That court held that it was not bound by the Tennessee court's decree, and therefore would not pass upon this question. Writing for the United States Supreme Court, Mr. Justice Holmes stated, at page 18:

"Whatever may be the conclusiveness of the Tennessee decree it cannot operate upon the interdiction

[of the Louisana Courts] directly. . . . Assuming that the plaintiff has every other right that he says, he cannot pursue his rights across country but must proceed along the road that Louisana law provides."

In the case of In re Guardianship of Jones, 66 N. D. 185, 263 N. W. 160 (1935), Mrs. Jones was adjudicated an incompetent and a guardian of her estate was appointed in the County Court of Dickey County, N. D. Thereafter, Mrs. Jones took up her residence in Florida, and the Florida court, in a subsequent proceeding, adjudicated her competent and authorized to take possession of her property. The North Dakota court refused to recognize the Florida decree, stating, at pages 189-90:

"She may have acquired a domicile in Florida but this does not mean that the courts of this state thereby lost jurisdiction which it had once acquired over her or her property in this state. . . . A person may be found to be competent in one state *but that determination does not terminate the incompetency* previously established in another state. . . . The jurisdiction of the county court of Dickey county does not extend to Florida, and does not determine the appellant's competency or incompetency in that state. *Conversely it would appear that the Florida court may not terminate incompetency which had previously been established in this state by the county court of Dickey county. . . . If the appellant has in fact become competent, she cannot substitute for this procedure the determination of the court of a foreign state."* (Italics supplied.)

In the case of In re Guardianship of Baxter, 191 Iowa 407, 410-13, 182 N. W. 217 (1921), defendant was adjudicated incompetent by a California court and thereafter a foreign guardian was appointed by an Iowa court. The validity of the California decree was at issue. The Iowa Supreme Court stated:

"Under the 'full faith and credit' clause of the federal constitution the courts of this state are required

to recognize and give validity to the judgments of every other state of the Union: Constitution of the United States, art. 4 §1. . . .

"The court had jurisdiction of the subject matter. It has jurisdiction of the incompetent by the service of a notice which the court held to be good and sufficient. Such being the case, the judgment cannot be attacked in this proceeding by the temporary guardian, because of the claim that the notice was more specific than was required. . . .

"Upon the record made, the district court was required to give full faith and credit to the judgment of the superior court of San Diego county, California, appointing the applicant, Charles T. Chandler, as guardian of the said Anna Baxter. . . .

"There is no sufficient showing in this record to impeach the validity of the order and judgment entered by the superior court of California in appointing Charles T. Chandler as guardian of the person and property of the incompetent. There is no showing that said court did not have jurisdiction of the subject matter of the action or of the person of the incompetent. Therefore the judgment of said court must be given full faith and credit by the courts of this state. There is no showing that the said judgment is invalid or void. It therefore must be upheld, enforced, and recognized by the courts of this state. . . ."

Similarly, the courts of other States have indicated that the decree of the court of a sister State as to an individual's competency should not be collaterally attacked: Ward v. Stallworth, 243 Ala. 651, 11 So. 2d 374 (1942); Poorman v. Carlton, 122 Kan. 762, 253 Pac. 424 (1927). And in McMullin v. Commonwealth Title Ins. & Trust Co., 261 Pa. 574 (1918), the Pennsylvania Supreme Court stated, at page 578:

"We simply remark, without further comment, that the learned court was here under misapprehension as to its proper functions in this particular case; the

lunatic here was not its ward; it had not adjudged him a lunatic and could not have done so had it attempted it inasmuch as it had no jurisdiction over him, he being resident of another state. He was the ward of a court in another state and that court alone had jurisdiction over his person. It was by virtue of the adjudication of that court that he was legally adjudged a lunatic, and it was upon the certification of that court to the courts of this State that the latter acquired custody and control of the lunatic's property lying within this State."

It appears, therefore, that the Orphans' Court of Philadelphia County does not have jurisdiction in the instant case. The purpose of the petition before this court is to give petitioner the right to receive the support order and allotment direct without the intervention of the Florida guardian. This court has no power to make such an order. Even if this court were deemed to have discretionary jurisdiction it should not exercise such discretion in this case as a matter of comity. Were the law otherwise, hopeless confusion would result. There would be the anomoly that by inconsistent court decrees of sister States an individual would be deemed incompetent in one State and competent in another State.

Petitioner relies upon section 323 of the Incompetents' Estates Act of February 28, 1956, P. L. 1154, as amended, 50 PS §3323, which provides:

"Adjudication of Competency.—The court, upon petition and after such notice as it shall direct, may find, after a hearing at which good cause is shown, that a person previously adjudged incompetent has become competent".

The Incompetents' Estates Act of 1956 gives power to the *Pennsylvania orphans' courts* to adjudicate incompetents either residents of Pennsylvania or nonresidents owning property here, to appoint guardians of their estates and to supervise the administration

thereof. Therefore, implicit in the quoted section is the requirement that a *Pennsylvania* court shall have made the adjudication of incompetency. A fortiori, it does not, and was not intended to, apply to a decree of incompetency of a sister State. Moreover, as appears above, this section cannot constitutionally revoke, modify or change such a decree of a sister State.

Petitioner relies upon Earnshaw Appeal, 187 Pa. Superior Ct. 124, and Card Appeal, 177 Pa. Superior Ct. 502. However, in both of these cases the decree of incompetency was entered by a Pennsylvania court. Therefore, the Pennsylvania court had power to amend or revoke that decree so as to adjudicate the incompetent competent, even though in the latter case the incompetent was a nonresident. It follows that the cited cases are not in point.

The hearing judge concludes, therefore, that this court does not have jurisdiction in the instant case. This is unfortunate for petitioner because it appears from the evidence that petitioner is now mentally competent, and additional expenses will be involved in instituting proceedings in Florida to have petitioner adjudicated competent. However, these considerations are far less important than the scrupulous preservation of the doctrine of full faith and credit of court decrees. It is easy to succumb to the insidious temptation to adopt the practical in harsh cases and overlook required procedure. However, constitutional principles should never bow to the idol of expediency and convenience, lest the entire constitutional system fall and chaos result.

Accordingly, this October 20, 1959, the petition is dismissed because this court does not have jurisdiction thereof.